# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TERRY MONSON, derivatively on behalf of ASSOCIATED ESTATES REALTY CORP. and individually on behalf of himself and all other similarly situated shareholders of ASSOCIATED ESTATES REALTY CORP., <br><br> Plaintiff, <br><br> vs. <br><br> JEFFREY I. FRIEDMAN, ALBERT T. ADAMS, MICHAEL E. GIBBONS, MARK L. MILSTEIN, JAMES J. SANFILIPPO, JAMES A. SCHOFF, RICHARD T. SCHWARZ, and JAMES M. DELANEY, <br><br> Defendants, <br><br> -and- <br><br> ASSOCIATED ESTATES REALTY CORP., an Ohio Corporation, <br><br> Nominal Defendant. | Civil Action No. <br><br><br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT

Plaintiff Terry Monson ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1. Plaintiff asserts this action for breach of fiduciary duties and waste of corporate assets derivatively on behalf of Associated Estates Realty Corp. ("Associated" or the "Company") against the current members of the Company's Board of Directors (the "Board") as well as one former member (collectively, the "Defendants," defined individually below) for exceeding their authority under the Company's shareholder-approved Associated Estates Realty Corporation 2011 Equity-Based Award Plan (the "Plan").  Plaintiff also asserts a direct claim on behalf of himself and the public stockholders of Associated that were entitled to vote at the Company's 2014 Annual Meeting of Shareholders (the "2014 Annual Meeting") against the current members of the Board for breaching their fiduciary duty of candor by filing a false and misleading proxy statement in connection with the meeting.

2. In particular, the Plan, provides that no individual participant can be granted stock awards during a calendar year covering more 125,000 shares.  As described in more detail below, the Board, through its Executive Compensation Committee (the "Compensation Committee"), granted Defendant Jeffrey I. Friedman ("Friedman"), Associated's Chief Executive Officer and a director on the Board, stock awards in excess of the 125,000 share calendar-year limit in both 2012 and 2013.  The Board's actions, in granting and/or permitting the granting of stock awards in excess of the 125,000 limit, constitutes a breach of their fiduciary duties, and the excess shares granted to Friedman are *ultra vires* and should be rescinded.

3. Additionally, on March 28, 2014, the Board filed a Schedule 14A Proxy Statement (the "2014 Proxy") with the United States Securities and Exchange Commission ("SEC") in connection with the 2014 Annual Meeting, which was held on May 7, 2014.  In the 2014 Proxy, the Board sought shareholder support for the re-election of all seven of the Company's current directors.  In addition, in the 2014 Proxy, the Board sought shareholder

approval of the Amended and Restated 2011 Equity-Based Award Plan (the "Amended Plan"). As will be described below, the Board actively concealed its past misconduct from the Company's shareholders through the filing of a false and misleading 2014 Proxy.

4. As a result of the above misconduct, the Company and its shareholders have been, and will be, harmed.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Michigan and no defendant is a citizen of Michigan.

6. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7. Venue is proper in this district because nominal defendant Associated is incorporated and headquartered in this district.

## THE PARTIES

8. Plaintiff is a shareholder of Associated and has been a shareholder of Associated continuously since 2012. Plaintiff is a citizen of Michigan.

9. Nominal party Associated is an Ohio corporation with its principal place of business at 1 AEC Parkway, Richmond Heights, OH 44143-1467. Associated is a real estate investment trust that owns and operates over fifty apartment communities throughout the United States.

10. Defendant Jeffrey I. Friedman ("Friedman") has been the Chairman of the Board Chief Executive Officer of the Company since its organization in July 1993, and served as the

Company's President from the Company's organization to February 2000 and again since December 2002. Friedman is a citizen of the state of Ohio, and received the *ultra vires* grants challenged herein.

11. Defendant Albert T. Adams ("Adams") has served as a director on the Board since 1996. Adams is a citizen of the state of Ohio.

12. Defendant Michael E. Gibbons ("Gibbons") has served as a director on the Board since 1996. Gibbons is a citizen of the state of Ohio.

13. Defendant Mark L. Milstein ("Milstein") has served as a director on the Board since 1993. Milstein is a citizen of the state of Ohio.

14. Defendant James J. Sanfilippo ("Sanfilippo") has served as a director on the Board and a member of the Board's Compensation Committee since February 23, 2012. Sanfilippo is a citizen of the state of Ohio.

15. Defendant James A. Schoff ("Schoff") has served as a director on the Board since 2006 and served as a member of the Compensation Committee that granted the excess awards to Friedman in 2012 and 2013. Schoff is a citizen of the state of Ohio.

16. Defendant Richard T. Schwarz ("Schwarz ") has served as a director on the Board since 1994 and served as Chairman of the Compensation Committee that granted the excess awards to Friedman in 2012 and 2013. Schwarz is a citizen of the state of Ohio.

17. Defendant James M. Delaney ("Delaney") served as a director on the Board from 1999 until February 23, 2012, and served as a member of the Compensation Committee that granted the excess awards to Friedman in 2012. Delaney is a citizen of the state of Ohio.

18. Defendants Adams, Delaney, Gibbons, Milstein, Sanfilippo, Schoff, and Schwarz are collectively referred to as the "Defendants."

4

## **FURTHER SUBSTANTIVE ALLEGATIONS**

### *The Plan*

19. The Plan was adopted by Associated's Board on February 23, 2011, and approved by the Company's shareholders on May 4, 2011.

20. The Plan provided for the granting of various stock awards to the Company's officers, employees, and non-employee directors.

21. Pursuant to Section 2 of the Plan, the Compensation Committee is responsible for administering the Plan.

22. The Plan provided that no individual participant could be granted awards during a calendar year covering more 125,000 shares (the "Limit").

23. Specifically, as stated in Section 3(d) of the Plan:

No participant may be granted *Stock Options or other Awards under the Plan with respect to an aggregate of more than 125,000 Shares* (subject to adjustment as provided in Section 3(C) hereof) *during any calendar year*; provided, however, that in connection with the commencement of employment, a participant may be granted Stock Options and Share Appreciation Rights with respect to an aggregate of 100,000 Shares, which will not count against such annual limit. (Emphasis added.)

24. An "Award" is defined in Section 1 of the Plan and covers all possible awards that may be granted under the Plan. Specifically, an "Award" is defined as "any award of Stock Options, Share Appreciation Rights, Restricted Shares, Deferred Shares or Other Share-Based Awards under the Plan."

25. As described immediately below, the Board violated the Limit in both 2012 and 2013.

*The Awards to Friedman*

26. On February 2, 2012, the Compensation Committee (which at the time consisted of defendants Delaney, Schoff, and Schwarz), granted Friedman an award of restricted shares under the Plan.  As described in the Schedule 14A Proxy Statement filed by the Company with the SEC on March 26, 2012 (the "2012 Proxy"), the award "consist[ed] of restricted shares granted on February 2, 2012" and had a grant date fair value of $1,050,000. As indicated in a Form 4 filed by Friedman with the SEC on the next day the award consisted of 63,714 shares.

27. Additionally, as described in a Schedule 14A Proxy Statement filed by the Company with the SEC on March 28, 2013 (the "2013 Proxy"), on February 15, 2012 the Compensation Committee granted Friedman stock options to purchase 125,000 shares of Associated common stock.

28. Accordingly, during the 2012 calendar year, Friedman was granted stock awards covering 188,714 shares under the Plan, 63,714 shares in excess of the Limit. These excess shares are *ultra vires* and should be rescinded.

29. On February 1, 2013, the Compensation Committee (which at the time consisted of defendants Sanfilippo, Schoff, and Schwarz), granted Friedman an award of restricted shares under the Plan.  As described in the 2013 Proxy, the award "consist[ed] of restricted shares granted on February 1, 2013" and had a grant date fair value of $938,000. As indicated in a Form 4 filed by Friedman with the SEC on February 5, 2013, the award consisted of 57,370 shares.

30. Additionally, as described in the 2014 Proxy, on February 1, 2013 the Compensation Committee granted Friedman an award of restricted stock units covering 192,661 shares. Friedman filed a Form 4 noting the award on February 5, 2013.

6

31. Accordingly, during the 2013 calendar year, Friedman was granted stock awards covering 250,031 shares under the Plan, 125,031 shares in excess of the Limit. These excess shares are *ultra vires* and should be rescinded.

### *The Defendants Intentionally Violated the Plan*

32. The Defendants intended to violate the Plan. There were only two basic facts that would have put the Defendants on notice of the violations: the existence of the 125,000 share calendar year limit in the Plan and the size of the awards granted to Friedman. Each of the Defendants knew and/or were on notice of the 125,000 share calendar year limit in the Plan and each of the Defendants knew and/or were on notice of the size of the awards granted to Friedman.

33. Specifically, the following facts lead to the conclusion that the Defendants were aware of the existence of the Limit:

   a. Defendants Delaney, Sanfilippo, Schoff, and Schwarz were members of the Compensation Committee responsible for administering and overseeing the Plan and thus certainly knew the terms of the very plan they were administering.

   b. Defendants Friedman, Adams, Gibbons, and Milstein were on the Board that adopted the Plan in February 2011. Defendants Adams, Gibbons and Milstein were also on the Board that adopted amendments to the Plan on February 25, 2014, including an amendment to the Limit. Accordingly, it is reasonable for the Court to infer that Friedman, Adams, Gibbons, and Milstein were aware of the existence of the Limit.

   c. Each of the Defendants are eligible to receive and have received awards under the Plan as part of their annual compensation.

And the following facts lead to the conclusion that the Defendants were aware of the size of the equity awards granted to Friedman:

   a. Defendants Delaney, Sanfilippo, Schoff, and Schwarz were members of the Compensation Committee that approved the grants to Friedman and thus certainly knew the size of the awards they granted.

b.  Moreover, the Compensation Committee reports its compensation decisions to the full Board. As stated in the 2014 Proxy, "the [Compensation] Committee reports to the Board with respect to the design and implementation of executive compensation." The 2014 Proxy also state that the "Chairman of the [Compensation] Committee is responsible for updating the Board of Directors on all matters related to the executive compensation program."

c.  The size of the awards made to Friedman were made in public filings with the SEC, including Form 4s and proxy statements.  Accordingly, it is certainly reasonable to infer that the full Board was aware of the size of the awards.

Finally, as described below, Defendants' efforts to conceal their misconduct is further evidence that Defendants were aware that they had violated the Plan.

### *Defendants Amend the Limit and File a False and Misleading Proxy*

34.  On February 25, 2014, the Board adopted the Amended Plan.  The Amended Plan had two major differences from the Plan.

35.  First, in the Amended Plan, the Board increased the number of shares available for issuance by 2,700,000 shares.

36.  And second, the Board amended the Limit increasing it to 500,000 shares and making it applicable only to stock options and share appreciation rights.  A redline of these amendments appears below:

> *Annual Award Limit*. No participant may be granted Stock Options or ~~other Awards~~ <u>Share Appreciation Rights</u> under the Plan with respect to an aggregate of more than ~~125,000~~ <u>500,000</u> Shares (subject to adjustment as provided in Section 3(C) hereof) during any calendar year; provided, however, that in connection with the commencement of employment, a participant may be granted Stock Options and Share Appreciation Rights with respect to an aggregate of 100,000 Shares, which will not count against such annual limit.

37.  In other words, while the Plan limited *all* stock awards that could be granted to an individual participant during any calendar year at 125,000, the Amended Plan *only* limited the amount of stock options and share appreciation rights that could be granted to an individual participant during a calendar year and set that limit at 500,000. Under the Amended Plan, there

would be no annual limit on the number of restricted shares, deferred shares or other share-based awards that could be granted to an individual participant during a calendar year.

38. On March 28, 2014, the Board filed the 2014 Proxy in connection with the 2014 Annual Meeting, which was held on May 7, 2014. In the 2014 Proxy via Proposal No. 2, the Board solicited shareholder approval of the Amended Plan. Additionally, via Proposal No. 1, the Board solicited the re-election of each of the Company's Board members.

39. The Company's shareholders approved the Amended Plan and re-elected each of the Company's Board members at the 2014 Annual Meeting. However, the decisions made by the Company's shareholders were based on a materially false and misleading 2014 Proxy.

40. First, the Board failed to disclose in the 2014 Proxy that the Compensation Committee granted Friedman more shares than allowed under the Plan in each of the preceding two years. In considering whether to approve an equity compensation plan which would allow the Compensation Committee to grant an additional 2.7 million shares, it was important for shareholders to have known that the Compensation Committee granted more shares than allowed under the Plan in each of the last two years. Similarly, truthful and complete disclosure regarding the Board's repeated violations of the Plan is material information in determining whether to re-elect each of the seven members of the Board, and especially the three members of the Compensation Committee. Truthful and complete disclosure of this information is important for shareholders in determining whether these directors can and will faithfully comply with their fiduciary duties to the Company.

41. Moreover, in the 2014 Proxy the Board actively concealed its past violations of the Plan. In describing the limit, the 2014 Proxy deceptively states: "Currently, the number of stock options that can be granted to an executive is capped at 125,000 stock options per annum."

9

Of course, if the Limit actually applied only to stock options, the Board would have been in compliance with the Plan. However, the Board conveniently failed to disclose that the Limit applied to all awards, and not just stock options.

42. Additionally, in Proposal 2 the Board described the differences between the Plan and the Amended Plan. As stated in the 2014 Proxy: "The details of the Restated Equity Plan are consistent with the Equity Plan, approved by shareholders on May 4, 2011, except to increase the shares available for future Awards by 2,700,000 shares, and increase the individual annual Award limit of Stock Options and Share Appreciation Rights to 500,000." This is false. This description of the annual limit leads shareholders believe that the Plan originally limited only stock options and share appreciation rights and that the Amended Plan was simply increasing that limit. Of course, what the Board was really doing was removing the annual limit on restricted shares, deferred shares or other share-based awards, the very limits they had previously violated.

43. The Board's active attempt to conceal its past misconduct—first by amending the Plan after the fact to alter the terms that it violated and then by omitting these changes from the 2013 Proxy's discussion of the amendments—evidences the directors' breaches of their duty of loyalty.

44. In conclusion, the 2014 Proxy was materially misleading and prevented shareholders from casting an informed vote regarding Proposals 1 and 2 at the 2014 Annual Meeting.

**DEMAND FUTILITY ALLEGATIONS**

45. Plaintiff brings this action derivatively on behalf of Associated to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct.

46. Plaintiff has owned Associated stock during the time of the wrongful course of conduct alleged herein and continues to hold Associated stock.

47. Plaintiff will adequately and fairly represent the interests of Associated in enforcing and prosecuting its rights and has retained counsel competent and experienced in shareholder derivative litigation.

48. At the time of this filing the Board consists of the following seven directors: Adams, Friedman, Gibbons, Milsten, Sanfilippo, Schoff, and Schwarz (the "Current Board"). Each member of the Current Board was on the Board when the Plan was violated, and was on the Board that filed the false and misleading 2014 Proxy, and each member has been named as a defendant in this Action.

49. Plaintiff did not make a demand on the Current Board prior to instituting this Action. A pre-suit demand upon the Current Board is futile for several reasons.

50. Defendants Sanfilippo, Schoff, and Schwarz were members of the Compensation Committee that granted awards in violation of the Limit. Friedman accepted awards in violation of the Limit and the remaining Current Board members allowed to the grants to occur despite having knowledge of the Plan violations.  The Board's actions, in approving, permitting, and/or accepting awards in violation of the express, unambiguous terms of the Plan could not have been a good faith exercise of business judgment, and accordingly demand is excused.  In addition, as a result of their actions, each Current Board member faces a substantial likelihood of liability, and

11

therefore are incapable of considering a demand here. Accordingly, demand as to the Current Board is excused.

51. Moreover, the entire Current Board attempted to conceal its misconduct—first by adopting the amendments to the Plan that altered the terms that were violated and then by filing a proxy that concealed the nature of these amendments. These actions by the Current Board are a breach of Current Board's duty of loyalty and accordingly demand is excused.

52. In addition, Defendant Friedman is incapable of considering a demand in this action because he is neither disinterested nor independent. Friedman received the awards challenged herein, and thus has a strong financial incentive to maintain the status quo by not authorizing any corrective action because it could force him to disgorge the improperly obtained awards. Accordingly, Friedman is not disinterested. In addition, as CEO of the Company, and with his principal source of income based on his role with the Company, Friedman is not independent

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of Associated common stock as of March 19, 2014 the record date for the determination of shareholders who were entitled to vote at the 2014 Annual Meeting (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According

to the 2014 Proxy, as of March 19, 2014, over 57 million shares of common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Associated or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

55. Questions of law and fact are common to the Class, including, *inter alia*, the following:

    a. Have the Board members breached their fiduciary duties by filing the false and misleading 2014 Proxy; and

    b. Whether Plaintiff and the other members of the Class were harmed by being forced to vote at the 2014 Annual Meeting on the basis of the false and misleading 2014 Proxy.

56. Plaintiff's claims are typical of the claims of the other members of the class and Plaintiff has the same interests as the other members of the Class.

57. Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

58. A class action is a superior method for adjudication because the prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

59. Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

60. A class action is a superior method for adjudication because the cost of prosecuting individual actions is prohibitive and the expense of adjudicating repetitious individual claims in different courts would be an inefficient use of judicial resources.

61. Concentrating the litigation of claims in this forum is desirable because the Company is an Ohio corporation and the litigation involves issues of Ohio law.

62. Defendants have acted on grounds generally applicable to the class, making a class-wide adjudication a superior method of resolving the claims and making final injunctive relief appropriate with respect to the Class as a whole.

63. There are no issues requiring individualized resolution or the creation of sub-classes, thus class-wide adjudication will not present manageability concerns.

## COUNT I
### Breach of Fiduciary Duty
### (Against All Defendants)

64. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65. As officers and/or directors of the Company, each of the Defendants owed the Company and its shareholders fiduciary duties.

66. In authorizing, approving, and/or by abdication of duty permitting the granting of awards in violation of the terms of the Plan, the Defendants exceeded their authority under the Plan, did not act in good faith toward the Company and thus breached their fiduciary duties under Delaware law.

67. These actions were not a good faith exercise of business judgment to protect and promote the Company's corporate interests, but rather lined the pockets of Friedman at the expense and to the detriment of the Company.

68. Defendants also breached their fiduciary duty of loyalty by intentionally violating the Plan and then engaging in efforts to conceal their misconduct. These actions were not in the Company's best interest.

69. Friedman breached his fiduciary duty to the Company by accepting grants in violation of the Plan for his own personal benefit to the detriment and expense of the Company. Accordingly, Friedman breached his fiduciary duties of loyalty and good faith.

70. As a result of the Defendants' actions, the Company has been and will be damaged.

71. Plaintiff and the Company have no adequate remedy at law.

## COUNT II
### Waste of Corporate Assets
### (Against the Defendants)

72. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73. The Defendants have caused and will cause the Company to waste valuable corporate assets by granting Friedman awards in excess of what was authorized under the Plan.

74. By granting Friedman awards in excess of the amount allowed under the Plan in 2012 and 2013, the Defendants granted awards that no director of ordinary sound business judgment would award, so as to constitute waste.

75. As a result of this waste of corporate assets, the Defendants are liable to the Company.

## COUNT III
### Unjust Enrichment
### (Against Friedman)

76. Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

77. Friedman received unauthorized personal financial benefits as a result of the awards challenged herein.

78. It would be unconscionable and against fundamental principles of justice, equity, and good conscience for Friedman to retain the benefits of the awards that were granted in plain violation of the Plan.

79. Friedman has been unjustly enriched at the expense and to the detriment of the Company.

80. Accordingly, this Court should order Friedman to disgorge the shares awarded in excess of the Limit.

81. Plaintiff has no adequate remedy at law.

## COUNT IV
### Breach of Fiduciary Duty of Candor in Connection with the 2014 Proxy
### (Direct Claim against the Current Board)

82. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83. The fiduciary duties of the Current Board require them to be completely truthful with the Company's shareholders and disclose all information material to the decisions that confronted Associated shareholders at the 2014 Annual Meeting.

84. As set forth above, the members of the Current Board have breached their fiduciary duty by filing and seeking shareholder action on the basis of the materially false and misleading 2014 Proxy.

85. As a result, Plaintiff and Class members have been harmed as they were forced to cast votes at the 2014 Annual Meeting based on a false and misleading proxy statement.

86. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. A declaration that the awards granted to Friedman challenged herein are in excess of the calendar year limit in the Plan and are therefore *ultra vires* and not authorized by the Plan;

B. Rescission of the excess shares granted to Friedman;

C. As to Count IV, declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

D. Declaring the shareholder approval of the Amended Plan at the 2014 Annual Meeting ineffective;

E. Ordering the re-election of each of the Company's Board members following the dissemination of a truthful proxy statmeent;

F. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and violation of the Plan, plus pre-judgment and post-judgment interest;

G. Equitable and/or injunctive relief as necessary or permitted by law and equity, including disgorgement, attachment, impoundment, and/or imposition of a constructive trust on or otherwise restricting the disposition/exercise of the challenged grants discussed herein;

H.	Directing Associated to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with the Plan, applicable laws and policies, and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

I.	Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

J.	Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 3, 2014

Respectfully submitted,

JAMES D. WILSON LLC

/s/ *James D. Wilson*
James D. Wilson (Reg. No. 0041592)
Rochelle L. Paley (Reg. No. 0042697)
Aanchal Soni (Reg No. 0086334)
29225 Chagrin Blvd., Suite 350
Cleveland, Ohio 44122
(216) 342-4138; Fax: (216) 342-4288
jwilson@wilsonlawyers.com
rpaley@wilsonlawyers.com
asoni@wilsonlawyers.com

Attorneys for Plaintiff

Of Counsel:

Nicholas I. Porritt, Esq.
Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121

I, Terry Monson, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.

Dated: May 28, 2014

_____
Terry Monson