# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

TERRY MONSON, derivatively on behalf of ASSOCIATED ESTATES REALTY CORP. and individually on behalf of himself and all other similarly situated shareholders of ASSOCIATED ESTATES REALTY CORP.,

   Plaintiff,

  vs.

JEFFREY I. FRIEDMAN, ALBERT T. ADAMS, MICHAEL E. GIBBONS, MARK L. MILSTEIN, JAMES J. SANFILIPPO, JAMES A. SCHOFF, RICHARD T. SCHWARZ, and JAMES M. DELANEY,

   Defendants,

  -and-

ASSOCIATED ESTATES REALTY CORP., an Ohio Corporation,

   Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:14-cv-01477

Judge Patricia A. Gaughan

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## <u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

Plaintiff Terry Monson, derivatively on behalf of Associated Estates Realty Corp. and individually on behalf of himself and all other similarly situated shareholders of Associated Estates Realty Corp., pursuant to Federal Rules of Civil Procedure 23 and 23.1, moves for preliminary approval of a settlement in the above-captioned action.  Rationale in support of this Motion is set forth in the accompanying Memorandum of Law in Support.

*/s/James D. Wilson*

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ................................................................................................ 1

II.  FACTS ................................................................................................................................... 1

    A.  Background ................................................................................................................ 1

    B.  Plaintiff's Lawsuit ................................................................................................... 2

    C.  Litigation .................................................................................................................. 4

    D.  Settlement ................................................................................................................ 4

    E.  Attorneys' Fees and Incentive Award ...................................................................... 6

    F.  Notice ...................................................................................................................... 6

III.  ARGUMENT ....................................................................................................................... 7

    A.  The Court Should Preliminarily Approve the Settlement ......................................... 7

        1.  The Standards and Procedures for Preliminary Approval ...................................... 7

        2.  The Settlement Is Fair, Reasonable, and Adequate .............................................. 9

        3.  The Settlement Is the Product of Serious Negotiations, Is Not the Result of Collusion, and Falls Within the Range of Possible Approval ............................... 11

    B.  The Court Should Preliminarily Certify the Class for Settlement ............................. 12

        1.  The Elements of Rule 23(a) Are Satisfied ............................................................. 13

        2.  The Elements of Rule 23(b) Are Satisfied ............................................................ 19

    C.  Attorneys' Fees and Incentive Award ...................................................................... 20

    D.  The Proposed Nature and Method of Class Notice Are Constitutionally Sound and Appropriate ................................................................................................................ 21

    E.  The Court Should Schedule a Final Settlement Hearing .............................................. 23

IV.  CONCLUSION .................................................................................................................... 24

## TABLE OF AUTHORITIES

### Cases

*Aguilar v. Melkonian Enters., Inc.*, No. 05-0032-OWW-LJO, 2007 U.S. Dist. LEXIS 8146, at *10-13 (E.D. Cal. Jan. 24, 2007)....................................................................................................... 20

*Amchem Prods. v. Windsor*, 521 U.S. 591 (U.S. 1997) ............................................................. 11, 12

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) ......................................... 14

*Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) ................................................. 13

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ................................................... 16

*Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002)........................... 13

*Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000)............................................................. 18

*Edwards v. Benson*, No. 2:13-cv-00330-BSJ (D. Utah May 19, 2014) ........................................ 22

*Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F.Supp.446, 452 (E.D. Pa. 1985).......................... 11

*Franklin v. Midland Funding, LLC*, No. 3:10 CV 91, 2011 U.S. Dist. LEXIS 89919, at *35 (N.D. Ohio Aug. 12, 2011) ............................................................................................................ 8

*Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982) ............................................................... 13, 16

*Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973) ................................................................... 9

*Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012).......................................... 21

*Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)................................... 8

*Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D.Pa. 1997) ............................................................... 9

*In re American Medical Systems, Inc. ("AMS")*, 75 F.3d 1069, 1079 (6th Cir.1996)............. 13, 15, 16, 17

*In re Cadence Design Sys.*, No. 08-4966 SC, 2011 U.S. Dist. LEXIS 96117, at *6 (N.D. Cal. Aug. 26, 2011) .............................................................................................................................. 8

*In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 838 (W.D. Pa. 1995) .................................... 11

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974).................................................................................................................... 11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *39 (W.D. Ky. Dec. 22, 2009).................................................................. 20

*In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *28 (Del. Ch. May 6, 2010) .......................................................................................................................... 20

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ................................................................................................................ 8, 9, 11

*In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Oh. 2001) ...................... passim

*In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631, 640 (E.D. Pa. 2003)................................... 9

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)..................... 8

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010)........................................... 10

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions ("Prudential II")*, 148 F.3d 283, 316-17 (3d Cir. 1998) ............................................................................................... 9

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) .................... 21

*In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 280 (S.D. Ohio 1997)........................... 16

*In re Warner Communications Sec. Lit.*, 798 F.2d 35, 37 (2d Cir. 1986)...................................... 12

*In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012)......15

*M. Berenson Co. v. Faneuil Hall Market Place, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987) ................. 12

*McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 U.S. Dist. LEXIS 22158, at *9 (S.D. Ohio June 2, 1999) ......................................................................................................................... 8

*Nottingham Partners v. Dana*, 564 A.2d 1089, 1094-97 (Del. 1989)........................................... 20

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) .................................................................................................................. 12

*Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982) ...................... 9

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292, 301 (M.D. Pa. 1995) ...................................... 9

*Phillips v. Cross*, No. 1:13-cv-00948-RGA (D. Del. Oct. 22, 2013) .......................................................... 22

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir.1989) ................................................................................. 8

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) .................................................................................................................................... 13

*Senter v. GMC*, 532 F.2d 511, 524-25 (6th Cir. 1976) .............................................................................. 17

*Skechers Toning Shoe Products Liability Litig.*, No. 3:11-MD-2308-TBR, 2012 U.S. Dist. LEXIS 113641, at *20 (W.D. Ky. Aug. 13, 2012) ............................................................................ 9, 11, 19

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ..................................................... 14, 16

*St. Louis Police Retirement System v. Severson*, No. 4:12-cv-05086-YGR (N.D. Cal. April 15, 2014) .... 22

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) .................................................. 15

*Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) ...................................................................... 17, 18

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) .................................. 19

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 267 (E.D. Ky. 2009) .......................... passim

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) .............................................. 12

*UAW v. GMC*, 497 F.3d 615, 626 (6th Cir. 2007) .................................................................................... 18

*United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986) .................................... 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011) .................................................................. 14

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) .............................................................................. 15

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................................ 12

*Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859, at *25 (W.D. Ky. Aug. 10, 2012) ............................................................................................................ 16, 17

## Statutes

Fed. R. Civ. P. 23(a) .................................................................................................................................. 13

Fed. R. Civ. P. 23(b) .................................................................................................................................. 19

Fed. R. Civ. P. 23(c)(2)(A) ....................................................................................................................... 21

Fed. R. Civ. P. 23.1(c) ............................................................................................................................... 21

Rule 23(a) .................................................................................................................................................. 17

Rule 23(a)(1) .............................................................................................................................................. 13

Rule 23(a)(2) .............................................................................................................................................. 15

Rule 23(a)(3) .............................................................................................................................................. 15

Rule 23(a)(4) .............................................................................................................................................. 18

## Other Authorities

2 NEWBURG ON CLASS ACTIONS §7.24 at pp. 7-81--82 .......................................................................... 19

7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1839 .......................................................... 8

MANUAL FOR COMPLEX LITIGATION, FOURTH (2008) § 21.132 .................................................................. 12

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.633 (2008) ................................................................ 23

## I.      **PRELIMINARY STATEMENT**

Plaintiff Terry Monson ("Plaintiff"), through counsel, has negotiated a proposed settlement ("Settlement") that provides substantial benefits to Associated Estates Realty Corp. ("AERC" or the "Company") and AERC's shareholders.  As explained herein, the Settlement requires AERC's Chief Executive Officer, Mr. Jeffrey Friedman ("Friedman"), to relinquish a significant number of stock options that he allegedly received improperly and potentially in violation of the Company's 2011 Equity-Based Award Plan ("2011 Plan").  The Settlement also requires AERC's Board of Directors ("Board") to implement substantive corporate governance measures designed to protect against the occurrence of possible similar violations in the future.

Given that the Settlement achieves a substantial portion of the relief Plaintiff sought to obtain at the outset of this litigation, Plaintiff respectfully requests that the Court: (1) preliminary approve the Settlement; (2) preliminarily certify the settlement Class (defined below) for settlement purposes; (3) preliminarily approve the form, content, and method of notice; and (4) schedule a final approval hearing (the "Settlement Hearing").

## II.     **FACTS**

### A.      Background

In 2011, AERC's Board adopted (with shareholder approval) the 2011 Plan.  ¶ 19.[1] According to the language of the 2011 Plan, no individual participant could be "granted Stock options or other Awards under the [2011] Plan with respect to an aggregate of more than 125,000 [s]hares" during any calendar year, with "Awards" being defined to include any type of share-based award.  ¶¶ 22-24.  Unbeknownst to Plaintiff at the time he filed the Complaint, in February 2012, the Board adopted a resolution purportedly amending the 2011 Plan to clarify that the

---

[1] "¶ __" and "¶¶ __" refers to paragraphs in the Plaintiff's Verified Shareholder Derivative and Class Action Complaint (the "Complaint") (Dkt. 1).

125,000 share annual limitation for an individual applied only to stock options and share appreciation rights and not to any other type of share-based award (the "2012 Resolution").

In 2012, in anticipation of (but prior to) the adoption of the 2012 Resolution, AERC's Executive Compensation Committee granted to AERC's Chief Executive Officer, Friedman, awards of 63,714 restricted shares and 125,000 stock options.  ¶¶ 26-28.  In 2013, the following year, AERC's Executive Compensation Committee granted to Friedman awards of 250,031 restricted shares.  ¶¶ 29-31.

In 2014, the Board adopted (with shareholder approval) the AERC Amended and Restated 2011 Equity-Based Award Plan (the "Amended/Restated 2011 Plan").  ¶ 34.  The proxy statement for AERC's 2014 annual shareholder meeting (the "2014 Proxy") attached a copy of the Amended/Restated 2011 Plan.  Significantly, the Amended/Restated 2011 Plan increased to 500,000 the annual limit on stock options and share appreciation rights awarded to any individual participant.  ¶ 36.  The 2014 Proxy's textual description and the terms of the Amended/Restated 2011 Plan were consistent with the 2012 Resolution.  In other words, to the extent a board resolution (*i.e.*, the 2012 Resolution) in and of itself was insufficient to modify the terms of a shareholder-approved compensation plan (*i.e.*, the 2011 Plan), the 2014 Proxy and Amended/Restated 2011 Plan formally and/or officially effected the increase of equity-based award limits as the Board initially intended via the 2012 Resolution.  To date, the defendants maintain that the 2012 Resolution was effective in terms of amending the 2011 Plan and that, in any event, Friedman's 2012 and 2013 awards were permitted under the 2011 Plan.

B.    Plaintiff's Lawsuit

Plaintiff filed suit on July 3, 2014 (the "Action").  Plaintiff's Complaint asserted four counts:

2

(i)     that AERC's Board had breached its fiduciary duties to the Company and shareholders (a) by granting (and Friedman, in addition, breached his fiduciary duties by accepting) the share-based awards to Friedman in each of 2012 and 2013, to the extent those awards, on a cumulative annual basis in each year considered separately, exceeded 125,000 options and/or shares, and also (b) by not, in the 2014 Proxy, stating that the 2012 and 2103 awards to Friedman had exceeded the applicable individual limits and/or fully and accurately stating a comparison between the scope of the limitation under the 2011 Plan and the scope under the Amended/Restated 2011 Plan (Count I);

(ii)    that in making the grants in 2012 and 2013, to the extent each of them exceeded 125,000 options and/or shares, AERC's Board had engaged in a waste of corporate assets (Count II);

(iii)   that Friedman had been unjustly enriched to the extent the awards, in each year considered separately, exceeded 125,000 options and/or shares (Count III); and

(iv)    that AERC's Board had breached its fiduciary duty of candor by making materially false and misleading statements or omissions in the 2014 Proxy regarding the 2012 and 2013 equity awards to Friedman and the comparison between the scope of the individual limits in the 2011 Plan and the Amended/Restated 2011 Plan.  (Count IV).

Plaintiff asserted the first three counts derivatively on behalf of (and for the benefit of) AERC. Plaintiff asserted the fourth count individually and on behalf of all owners of AERC common stock as of March 19, 2014, the record date for the determination of stockholders who were entitled to vote at AERC's 2014 annual shareholder meeting (the "Class").

Plaintiff's Complaint sought, among other things, the rescission of all awards to Friedman in 2012 and 2013 that exceeded the annual 125,000 award limit pursuant to the 2011 Plan; a declaration that the shareholder approval of the Amended/Restated 2011 Plan was ineffective; the re-election of the members of the Board following circulation of a revised proxy statement; an award to the Company of any damages it may have sustained from the alleged wrongful conduct; enhancements to the Company's governance and internal procedures to ensure future compliance with the terms of equity plans; and an award to Plaintiff for reasonable

attorney fees and other costs and expenses incurred in litigating the Action.  Significantly, at the time Plaintiff filed the Complaint, he was unaware of the Board's February 2012 action taken regarding the scope of the 2011 Plan's share-based award limit via the 2012 Resolution.

C.    Litigation

The Court entered an order setting a date for response to the Complaint (based on the agreement of the parties), and a further order setting a case management conference that triggered obligations for pre-trial preparations under applicable federal and local rules.  In the meantime, the parties undertook settlement discussions, with Plaintiff providing a formal, written demand.  In the course of the discussions, counsel for the defendants made Plaintiff's counsel aware of, and provided a copy of, the pertinent portion of the minutes of the meeting of the Board in February 2012 at which the 2012 Resolution was adopted.  Following multiple communications, both written and oral, over the space of several weeks, the Parties reached an agreement in principle for a settlement that is now reflected in a stipulation, which is attached to the Declaration of James D. Wilson as Exhibit "1" (the "Stipulation of Settlement") and discussed further below.

On August 28, 2014, in light of the substantial progress in negotiations to that point, the likelihood of eventual agreement, and the follow-on need to negotiate, prepare and execute formal settlement documentation, the Parties requested, and the Court thereafter granted, a postponement of obligations associated with responding to the Complaint and dealing with the case management conference.

D.    Settlement

The terms of the Settlement, as reflected in the Stipulation of Settlement, are as follows:

    (i)      Friedman shall voluntarily relinquish and AERC will rescind 67,714 stock options awarded to him in 2012, the exact amount of share-based awards awarded in excess of the 125,000 limit under the 2011 Plan;

    (ii)     Friedman will acknowledge his voluntary relinquishment and the rescission of the 67,714 stock options;

    (iii)    AERC will not award Friedman any stock options for a period of twelve months following the resolution of this Action;

    (iv)    AERC will form a committee of the Board composed of independent directors which, in conjunction with AERC's General Counsel, will review the processes by which share-based awards are granted.  The committee will (a) review the Executive Compensation Committee's charter and other governing documents, (b) review applicable share-based compensation plans, and (c) develop a checklist of key provisions to be considered by the Executive Compensation Committee before granting any share-based awards;

    (v)      AERC's General Counsel, or an employee of the Company designated by the General Counsel, will analyze and confirm to the Executive Compensation Committee as to any contemplated share-based award, in advance of its being granted, that: (a) the overall number of shares remaining available under the applicable plan is sufficient to cover the proposed award, and (b) the annual limit per individual set forth in the applicable plan would not be exceeded by making the contemplated award;

    (vi)    All corporate governance measures implemented pursuant to the Settlement will be maintained for a period of not less than three years;

    (vii)   In consideration of the above-terms, Plaintiff, on behalf of himself and members of the settlement Class, and derivatively on behalf of the Company, will release the defendants from all known and unknown claims arising from the allegations asserted in the Complaint; and

    (viii)  Provided the Court grants final approval of the proposed Settlement, the Court will retain jurisdiction with respect to the implementation and enforcement of the Settlement.

Plaintiff believes the claims asserted in the Action have substantial merit.  However, Plaintiff recognizes and acknowledges the significant risk and expense associated with continuing to litigate this complex, potentially lengthy matter against the defendants through trial and, possibly, through appeal.  Plaintiff is also mindful of the burden of proof hurdles and the

various defenses available to the defendants under applicable Ohio law and in light of the particular facts now known (*e.g.*, the 2012 Resolution).  Plaintiff believes that a settlement at this time eliminates the substantial litigation risks (including the risk of no recovery or other benefit), while ensuring the Company and its shareholders immediately receive the substantial benefits of relinquishment of 63,714 stock options granted to Friedman in 2012 (prior to the 2012 Resolution) and the adoption of certain corporate governance enhancements directed toward the administration of the Company's equity plans.  Following a thorough investigation, analysis and evaluation of the relevant facts, allegations, defenses, controlling legal principles, and litigation risks intrinsic to shareholder actions of this kind generally, as well as present in this Action specifically, Plaintiff has determined that the Settlement set forth in the Stipulation of Settlement is fair, reasonable, and adequate.  Based on that evaluation, Plaintiff has determined that the Settlement is in the best interests of AERC and its shareholders and has agreed to settle the Action upon the terms and subject to the conditions set forth in the Stipulation of Settlement.

    E. <u>Attorneys' Fees and Incentive Award</u>

    Subsequent to negotiations concerning the substantive terms of the Settlement, the Parties negotiated and reached agreement on the attorneys' fees and expenses that AERC will pay to Plaintiff.  That amount is $300,000, subject to the Court's approval.

    Additionally, the Parties agree that Plaintiff Terry Monson will receive a cash payment of $2,500, subject to the Court's approval.  Plaintiff Terry Monson's cash payment, or incentive award, will be paid from the amount paid to Plaintiff for attorneys' fees and expenses.

    F. <u>Notice</u>

    As detailed in the Stipulation of Settlement, the Parties intend to provide notice of the Settlement to AERC's shareholders.  Subject to the Court's approval, AERC and Plaintiff's

Counsel will post a copy of the "Notice of Pendency and Proposed Settlement of Derivative and Class Action" (Exhibit "B" to the Stipulation of Settlement) on their respective websites; AERC will cause a copy of the "Notice of Pendency and Proposed Settlement of Derivative and Class Action" to be furnished to the U.S. Securities and Exchange Commission via a current report on Form 8-K; and, additionally, AERC will cause the "Summary Notice of Pendency and Proposed Settlement of Derivative and Class Action" (Exhibit "C" to the Stipulation of Settlement) to be published once in *Investor's Business Daily*.

**III.**    **ARGUMENT**

    A.    The Court Should Preliminarily Approve the Settlement

Immediately following the commencement of this Action, the Parties addressed the merits of the claims and defenses.  To this end, the defendants provided the pertinent portion of the minutes of the meeting of the Board in February 2012 at which the 2012 Resolution was adopted.  This information proved to be a critical piece of discovery that allowed the Parties to evaluate their respective claims and defenses, as well as determine the benefits and potential harm of litigating this Action with respect to the share-based awards received by Friedman in 2013.  The Parties decided to engage in arm's length settlement negotiations and, in the interest of the Company and its shareholders, seek to resolve this matter by way of the proposed Settlement.  The Settlement is fair, reasonable, and adequate and should be granted preliminary approval.

    1.    *The Standards and Procedures for Preliminary Approval*

"Procedures applicable to the settlement of a class action under Rule 23(e) of the Federal Rules of Civil Procedure must also be applied when a court is asked to approve the settlement of a derivative action under Rule 23.1."  *McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 U.S.

7

Dist. LEXIS 22158, at *9 (S.D. Ohio June 2, 1999) (citing 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1839).  The Sixth Circuit also applies similar substantive standards to approving derivative and class settlements.  *See id*. at *12-13; *see also In re Cadence Design Sys.*, No. 08-4966 SC, 2011 U.S. Dist. LEXIS 96117, at *6 (N.D. Cal. Aug. 26, 2011) ("Within the Ninth Circuit, Rule 23's requirements for approval of class action settlements apply to proposed settlements of derivative actions.").

"In evaluating a proposed settlement of a class action, the district court is required to examine the terms of the settlement and the process by which the settlement was arrived at, to make sure that the terms are reasonable and that the settlement is not the product of fraud, overreaching, or collusion."  *Franklin v. Midland Funding, LLC*, No. 3:10 CV 91, 2011 U.S. Dist. LEXIS 89919, at *35 (N.D. Ohio Aug. 12, 2011) (quoting *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir.1989)).  Similarly, [a]bsent evidence of fraud or collusion, [derivative] settlements are not to be trifled with.  . . .  Relevant factors framing [the] inquiry include the likelihood of success son the merits, the risk associated with the expense and complexity of the litigation, and the objections raised by class members."  *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (citations omitted).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement."  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Oh. 2001) ("the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review"); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness.").  "At the stage of preliminary

approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Skechers Toning Shoe Products Liability Litig.*, No. 3:11-MD-2308-TBR, 2012 U.S. Dist. LEXIS 113641, at *20 (W.D. Ky. Aug. 13, 2012) (citation omitted); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* ("*Prudential II*"), 148 F.3d 283, 316-17 (3d Cir. 1998); *General Motors*, 55 F.3d at 785.  The primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval.  *Skechers*, 2012 U.S. Dist. LEXIS 113641 at *20; *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. at 350; *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).  "A preliminary fairness assessment 'is not to be turned into a trial or rehearsal for trial on the merits' . . . [but], [r]ather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation."  *Id.* (quoting *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982)).

## 2.  *The Settlement Is Fair, Reasonable, and Adequate*

"[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."  *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. at 351 (citations omitted); *In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631, 640 (E.D. Pa. 2003) ("'[a] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel . . . '") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D.Pa. 1997)); *Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292, 301 (M.D. Pa. 1995) ("the opinions and recommendation of such experienced counsel are indeed

9

entitled to considerable weight"). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rules 23(e) and Rule 23.1(c).

The negotiation preceding the Settlement supports a finding in favor of its fairness, reasonableness, and adequacy. The Stipulation of Settlement is the result of arm's length negotiations, conducted by experienced counsel and after the exchange of critical discovery. Counsel for the Parties advocated their respective clients' positions vigorously throughout the negotiations and were prepared to litigate the case to completion if settlement was not obtained. The Parties reached the proposed Settlement only after the exchange of discovery and engaging in in-depth conversations regarding the merits of the case. No reason exists to doubt the Settlement's fairness. Moreover, the rescission of Friedman's stock options and additional corporate governance provide substantial benefits to AERC and its shareholders.

Further, continued litigation would be long, complex and expensive, and a burden to Court dockets. *See Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 358 ("the complexity, expense, and likely duration of the litigation" was a factor that weighed into conclusion that proposed settlement was fair, adequate, reasonable, and consistent with the public interest); *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 350 (3d Cir. 2010). Continuing this litigation against the defendants would entail a lengthy and expensive battle, involving numerous legal and factual issues. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations. Even after trial is concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re*

*Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 838 (W.D. Pa. 1995); *Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 359 (attendant risks of litigation weighed in favor of preliminary approval).

Balancing the complexities of this litigation, the substantial risk, expense, and duration of contained litigation against the defendants and likely appeal if Plaintiff did prevail at trial, Plaintiff firmly believes the Settlement represents a very good resolution of this litigation without unnecessary strain or hindrance to the Company.

> 3. *The Settlement Is the Product of Serious Negotiations, Is Not the Result of Collusion, and Falls Within the Range of Possible Approval*

The Settlement was the result of good faith, arm's length negotiations between experienced and informed counsel on both sides.

The experience and reputation of counsel constitutes an important factor in final approval of class action settlements. *See Skechers*, 2012 U.S. Dist. LEXIS 113641 at *26-27; *In re Inter-Op Hip Prosthesis Liaiblity Litig.*, 204 F.R.D. at 350; *General Motors*, 55 F.3d at 787-88; *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F.Supp.446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). This Settlement was negotiated by experienced counsel to meet all the requirements of Rule 23 (and, by extension, Rule 23.1) as discussed in *Amchem Prods. v. Windsor*, 521 U.S. 591 (U.S. 1997), and specifically to provide administrative procedures to assure all AERC shareholders equal and sufficient due process rights. Accordingly, the Settlement was not the produce of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.

In the absence of fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of counsel.  *In re Inter-Op Hip Prosthesis Liability Litig*., 204 F.R.D. at 350 (citing *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *see also Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." (citation omitted)); *In re Warner Communications Sec. Lit.,* 798 F.2d 35, 37 (2d Cir. 1986) ("[I]t is not a district judge's job to dictate the terms of a class settlement."); *M. Berenson Co. v. Faneuil Hall Market Place, Inc.,* 671 F. Supp. 819, 822 (D. Mass 1987) ("Where, as here, a proposed settlement has been reached after meaningful discovery, after arm's length negotiations, conducted by capable counsel, it is presumptively fair.") (footnote omitted).

The standards for preliminary approval are met in this case and the Court should grant the present motion so that AERC shareholders can respond to the proposed Settlement and the Court can evaluate its fairness at the final Settlement Hearing.

> B.    The Court Should Preliminarily Certify the Class for Settlement

The Supreme Court has recognized that the benefits of a proposed settlement can be realized only through the certification of a settlement class.  *See Amchem*, 521 U.S. 591.  The proposed class must be sufficiently cohesive so as to warrant certification: "there should be a common nucleus of facts and potential legal remedies among all class members, and . . . the class . . must be definable and defined for the judge."  MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.132 (2008).

The ultimate determination of whether a proposed class action settlement warrants approval resides in the Court's discretion, but "it must exercise that discretion within the framework of Rule 23."  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002) (citation omitted); *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  As discussed more fully below, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable, and adequate and is subject to approval by the Court.  At this stage, there is clear evidence that the Settlement is well within the range of possible approval and thus should be preliminarily approved.

1.     *The Elements of Rule 23(a) Are Satisfied*

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  *See*, *e.g.*, *Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004).  Here, all four elements easily are satisfied.

(a) Numerosity.

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable."  While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone."  *In re American Medical Systems, Inc. ("AMS")*, 75 F.3d 1069, 1079 (6th Cir.1996) (citation omitted); *see also*

13

*Bacon v. Honda of Am. Mfg., Inc*., 370 F.3d 565, 570 (6th Cir. 2004) ("There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).") (citation omitted); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 267 (E.D. Ky. 2009) ("A class size of 7,000 individuals satisfies the numerosity requirement.").

In the present case, Plaintiff seeks certification of the settlement Class. It is not possible to accurately determine the number of potential class members at this time. However, as of March 19, 2014 (the record date for the 2014 annual shareholder meeting), AERC had outstanding 57,566,529 common shares. (AERC 2014 Proxy Statement, p. 1.) The number of individuals and/or entities owning these shares is likely in the tens if not hundreds of thousands. Further, AERC's shareholders likely reside throughout the country and, potentially, across the globe. There can be no dispute, therefore, that the settlement Class meets the numerosity requirement.

(b) Commonality.

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*) (the court must look for "a common issue the resolution of which will advance the litigation"). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."

14

*AMS,* 75 F.3d at 1080 (internal quotations and citation omitted).  Significantly, the rule does not require that *all* questions be common or even that common questions predominate.  The "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."  *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *see also In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. at 341 (N.D. Ohio 2001) (commonality established notwithstanding "substantial differences of fact and law between class members").  The Sixth Circuit has instructed that class certification is appropriate "'if class members complain of a pattern or practice that is generally applicable to the class as a whole.  Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'"  *In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012) (*quoting Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

Applying these principles, it is evident that the commonality requirement of subsection (a)(2) is easily met.  The central underlying issue posed by this litigation is whether AERC's Executive Compensation Committee violated the terms of the 2011 Plan when it awarded Friedman stock options in excess of the 125,000 share-based figure.  Given the presence of this common question, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met.

(c)  Typicality.

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class."  The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the

15

court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (*citing AMS*, 75 F.3d at 1082). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *AMS,* 75 F.3d at 1082 (citation omitted); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). The measure of whether a plaintiff's claims are typical is whether the nature of their claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See*, *e.g., Falcon,* 457 U.S. at 156-157; *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 280 (S.D. Ohio 1997). The typicality requirement has been liberally construed by the federal courts. *See*, *e.g.*, *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2012 U.S. Dist. LEXIS 112859, at *25 (W.D. Ky. Aug. 10, 2012).

Here, individual variations among the members of the settlement Class do not exist. The claims of Plaintiff and all other AERC shareholders are predicated on the Board's alleged violation of the 2011 Plan and, in turn, the relationship between those asserted violations and disclosures in the 2014 Proxy. The defendants' potential liability for the resulting injury to each member of the settlement Class does not depend on any individual circumstance of any particular member of the settlement Class. Rather, Plaintiff alleges that the defendants breached fiduciary duties owed to the Company and/or otherwise damaged the Company by awarding stock options to Friedman in excess of the share-based award limits set forth in the 2011 Plan and, in turn, impaired the accuracy of disclosures made to the shareholder class as a whole. The common issues necessarily share the same degree of centrality to Plaintiff's claims such that in litigating the liability issues, Plaintiff reasonably can be expected to advance the interests of all absent

16

members of the settlement Class in a favorable determination with respect to each such issue. *See In re Inter-Op Hip Prosthesis Liability Litig*, 204 F.R.D. at 342 (plaintiffs satisfied their burden of showing that criteria of typicality met where their "interests are aligned with those of the proposed class, and in pursuing their own claims, the named plaintiffs will also advance the interests of the class members").  Accordingly, the typicality requirement of the rule is satisfied.

(d) Adequacy.

The fourth requirement of Rule 23(a) is set forth in subsection (a)(4), and requires that "the representative parties will fairly and adequately protect the interests of the class."  "There are two criteria for determining this element: 1) The representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 524-25 (6th Cir. Ohio 1976) (quoting *Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).  The adequacy element tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *AMS*, 75 F.3d at 1083 (internal quotation marks and citation omitted).  "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to 'vigorously prosecute the interests of the class.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *AMS*, 75 F.3d at 1083).  "[I]f there is more than one named representative, it is not necessary that all the representative meet the Rule 23(a)(4) standard; as long as one of the representatives is adequate, the requirement will be met." *Whitlock*, 2012 U.S. Dist. LEXIS 112859 at *27-28 (internal quotation marks and citations omitted).  These two components are designed to ensure that absentee class members' interests are fully pursued.

(i)   Plaintiff Terry Monson's Interests Are Not Antagonistic to the Settlement Class

Named Plaintiff Terry Monson is more than adequate to serve as the representative for the settlement Class (hereinafter the "Class Representative"). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel, . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW v. GMC*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotation marks and citations omitted). There is nothing to suggest that the proposed Class Representative has interests antagonistic to those of the absent settlement Class members in the vigorous pursuit of the Action against the defendants. *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent"). Here, the Class Representative and settlement Class members are equally interested in detailing to the Court and a jury the alleged violations of the 2011 Plan committed by AERC and the Board, and are further committed to obtaining appropriate relief from the defendants. To this end, Plaintiff has obtained an advantageous settlement that treats all members of the settlement Class in the same fashion, and provides real value to the Company. *See Thacker*, 259 F.R.D. at 268 (holding that no conflict existed where the plaintiffs and the class members "share the common goal of maximizing recovery for the class").

(ii)   The Settlement Class Has Been More Than Adequately Represented by Counsel

The second prong of Rule 23(a)(4) looks "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout*, 228 F.3d at 717. The

18

existence of the elements of adequate representation is presumed. 2 NEWBURG ON CLASS ACTIONS §7.24 at pp. 7-81--82. "Courts have previously approved class counsel with experience in conducting class actions as adequate." *Skechers*, 2012 U.S. Dist. LEXIS 113641 at *13.

In the present case, the presumption of adequate representation cannot be rebutted. With respect to the issue of adequacy of counsel, the Court may take judicial notice of the fact that counsel for the settlement Class has substantial experience in litigating securities fraud and shareholder derivative actions and have been lead counsel in numerous complex class action cases. A copy of Levi & Korsinsky LLP's Firm Resume is attached to the Declaration of James D. Wilson as Exhibit "2". Further, counsel for the settlement Class have and will continue to aggressively litigate this case. The adequacy requirement is satisfied for certification. *See Thacker*, 259 F.R.D. at 268; *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. at 343.

### 2. *The Elements of Rule 23(b) Are Satisfied*

In addition to satisfying the four prerequisites of Rule 23(a), a class action must meet at least one of the criteria set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiff alleged that the defendants breached their fiduciary duties to the Company and AERC's shareholders by improperly awarding Friedman stock options in excess of the shareholder-approved limits and then not adequately treating this circumstance in its 2014 Proxy disclosure. Under these circumstances, class certification is appropriate under Rule 23(b)(1) and (b)(2) because all members of the settlement Class are situated identically with respect to every issue of liability, the defendants' actions are identical vis-à-vis each individual member of the settlement Class, and to litigate the matters separately would risk exposing the defendants to different standards of conduct and/or adjudications. *See*, *e.g.*, *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) (affirming certification of class action pursuant to Fed. R. Civ. P.

23(b)(1)(A), (b)(1)(B) and (b)(2) where plaintiff alleged, inter alia, that defendants disseminated materially false and misleading information statement and breached fiduciary duties to stockholders); *In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *28 (Del. Ch. May 6, 2010) ("actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)"); *Aguilar v. Melkonian Enters., Inc.*, No. 05-0032-OWW-LJO, 2007 U.S. Dist. LEXIS 8146, at *10-13 (E.D. Cal. Jan. 24, 2007) (class certified under Fed. R. Civ. P. 23(b)(1) and (b)(2) for breach of fiduciary duty claims); *Nottingham Partners v. Dana*, 564 A.2d 1089, 1094-97 (Del. 1989) (certification under (b)(2) proper where "complaint alleged breaches of fiduciary duty and disclosure violations").

C.     Attorneys' Fees and Incentive Award

Counsel for the settlement Class seeks preliminary approval of an award of attorneys' fees and expenses in the amount of $300,000. The requested amount includes the incentive award to be paid to Plaintiff Terry Monson. Counsel's fee and expense award will in no way reduce the benefits to the settlement Class or the Company. The proposed award is not excessive and preliminary approval is appropriate. *See*, *e.g.*, *Thacker*, 259 F.R.D. at 271 (preliminarily approving settlement where the attorneys' fees did not appear excessive and where "the Court [did] not find any grounds to doubt the fairness of the proposed settlement"); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, at *39 (W.D. Ky. Dec. 22, 2009) (preliminary approval appropriate where attorneys' fees would be "distributed separately from the funds dedicated to the class" and where figures were "reasonable under the circumstances and [did] not demonstrate collusion").

D.    The Proposed Nature and Method of Class Notice Are Constitutionally Sound and Appropriate

"For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A) (emphasis added).  Similarly, the Court has discretion to direct notice to stockholders in connection with the settlement of stockholder derivative litigation.  *See* Fed. R. Civ. P. 23.1(c).  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent members of the settlement Class and potential members of the settlement Class to enable them to review the terms of the Settlement.  "'[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice."  *Thacker*, 259 F.R.D. at 271-72 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997)).  All that notice must do "is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests."  *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (internal quotations and citation omitted). The terms and contents of class notice are sufficient:

> [I]f they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing . . . and information [about] the class members' right to exclude themselves and the results of the failure to do so.

*Id.* (internal citations and quotation marks omitted).

Here, the Parties intend to provide notice through the internet, the U.S. Securities and Exchange Commission, and print.  By posting the notice on AERC's website and Levi & Korsinsky LLP's website, members of the settlement Class will be able to review the pertinent terms and conditions of the Settlement.  Further disclosures will be made by the Company via a current report on Form 8-K with the U.S. Securities and Exchange Commission as well as

publication in the widely-circulated *Investor's Business Daily*.  The Parties' proposed notice is adequate and valid.  *See*, *e.g.*, *Edwards v. Benson*, No. 2:13-cv-00330-BSJ (D. Utah May 19, 2014) (D.I. 58) (approving notice via publication in *Investor's Business Daily* and U.S. Securities and Exchange Commission); *St. Louis Police Retirement System v. Severson*, No. 4:12-cv-05086-YGR (N.D. Cal. April 15, 2014) (D.I. 104) (approving notice via U.S. Securities and Exchange Commission and press release in national newswire); *Phillips v. Cross*, No. 1:13-cv-00948-RGA (D. Del. Oct. 22, 2013) (D.I. 16) (approving notice via *Investor's Business Daily* and posting on Company's website).[2]

In connection with preliminary approval of the Settlement, the Parties are requesting the Court to establish dates by which notice of the Settlement will be posted and/or published, the date by which AERC shareholders may object to the Settlement, the dates by which counsel are to file papers in support of the Settlement, award of attorneys' fees and expenses and an incentive award, and the date of the final Settlement Hearing.  The parties request approval of the following schedule:

| 1. | Notice Date | Within ten calendar days after the entry of the Preliminary Approval Order |
|---|---|---|
| 2. | Deadline to File and Serve Objections | Fourteen (14) calendar days prior to the Settlement Hearing |
| 3. | Deadline to File and Serve Papers in support of Final Approval | Twenty-one (21) calendar days prior to the Settlement Hearing |
| 4. | Deadline to File and Serve Reply Supporting Settlement and Attorneys' Fees, Expenses, and Incentive Award, Response to Objections, and Declarations | Five (5) calendar days prior to Settlement Hearing |

---

[2] Copies of the *Edwards*, *St. Louis Police Retirement System*, and *Phillips* preliminary approval orders are attached collectively to the Declaration of James D. Wilson as Exhibit "3".

| | Concerning Compliance with Notice | |
|---|---|---|
| 5. | Settlement Hearing | At the convenience of the Court, approximately forty-five (45) calendar days following entry of the Preliminary Approval Order |

E.  The Court Should Schedule a Final Settlement Hearing

The Court should schedule a final fairness hearing to obtain all required information to determine that class certification is proper and the settlement should be approved.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.633 (2008).  The fairness hearing will provide a forum for proponents and opponents to explain, describe or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy, and reasonableness of the settlement.  Accordingly, Plaintiff requests that the Court schedule the time, date, and place of the final Settlement Hearing.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

(1) granting preliminary approval of the Settlement; (2) granting preliminary certification of the

settlement Class for settlement purposes; (3) granting preliminary approval of the form, content,

and method of notice; and (4) scheduling a final Settlement Hearing.

Dated: October 3, 2014                    Respectfully submitted,

                                          JAMES D. WILSON LLC

                                          /s/ *James D. Wilson*
                                          James D. Wilson (Reg. No. 0041592)
                                          Rochelle L. Paley (Reg. No. 0042697)
                                          Aanchal Soni (Reg No. 0086334)
                                          29225 Chagrin Blvd., Suite 350
                                          Cleveland, Ohio 44122
                                          (216) 342-4138; Fax: (216) 342-4288
                                          jwilson@wilsonlawyers.com
                                          rpaley@wilsonlawyers.com
                                          asoni@wilsonlawyers.com

                                          *Attorneys for Plaintiff*

Of Counsel:

Nicholas I. Porritt, Esq.
Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121

4832-3314-7422, v. 4