# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TERRY MONSON, derivatively on behalf of ASSOCIATED ESTATES REALTY CORP. and individually on behalf of himself and all other similarly situated shareholders of ASSOCIATED ESTATES REALTY CORP., <br><br> Plaintiff, <br><br> vs. <br><br><br> JEFFREY I. FRIEDMAN, ALBERT T. ADAMS, MICHAEL E. GIBBONS, MARK L. MILSTEIN, JAMES J. SANFILIPPO, JAMES A. SCHOFF, RICHARD T. SCHWARZ,  and JAMES M. DELANEY, <br><br> Defendants, <br><br> -and- <br><br> ASSOCIATED ESTATES REALTY CORP., an Ohio Corporation, <br><br> Nominal Defendant. | Case No. 1:14-cv-01477 <br><br> Judge Patricia A. Gaughan |

## <u>PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND AWARD FOR ATTORNEYS' FEES</u>

Plaintiff Terry Monson, derivatively on behalf of Associated Estates Realty Corp. and individually on behalf of himself and all other similarly situated shareholders of Associated Estates Realty Corp., pursuant to Federal Rules of Civil Procedure 23 and 23.1, moves for final approval of (i) the settlement in the above-captioned action and (ii) the agreed-upon award for attorneys' fees.   Rationale in support of this Motion is set forth in the accompanying Memorandum of Law in Support.

*/s/James D. Wilson*

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. FACTS ............................................................................................................................ 1

    A. Background ........................................................................................................... 1

    B. Plaintiff's Complaint ............................................................................................ 2

    C. Settlement ............................................................................................................. 3

    D. Notice ................................................................................................................... 5

III. ARGUMENT ................................................................................................................. 6

    A. The Court Should Grant Final Approval of the Settlement ................................. 6

        1. The Settlement Was Not Obtained Through Fraud or Collusion ............................. 7

        2. The Complexity, Expense, and Likely Duration of the Litigation Support Settlement .............................................................................................................. 7

        3. The Absence of Formal Discovery Does Not Disqualify Settlement ..................... 8

        4. Likelihood of Success on the Merits ...................................................................... 9

        5. Counsel for the Parties Recommends the Settlement ............................................. 9

        6. AERC Shareholders Have Not Objected to the Settlement ................................. 10

        7. The Settlement Accords with Public Policy ......................................................... 11

    B. The Court Should Certify the Class for Settlement ......................................... 11

        1. The Elements of Rule 23(a) Are Satisfied ........................................................... 12

        2. The Elements of Rule 23(b) Are Satisfied ........................................................... 14

    C. The Agreed-Upon Fee Should Be Granted Because Plaintiff Has Conferred a Substantial Benefit on AERC and Its Shareholders ......................................... 15

        1. Percentage of the Fund ......................................................................................... 16

        2. Common Benefits of Settlement ........................................................................... 17

        3. The Fee Is Supported by the Ramey Factors ....................................................... 19

    D. Plaintiff Should Receive an Incentive Payment ............................................... 24

IV. CONCLUSION ............................................................................................................ 25

i

## **TABLE OF AUTHORITIES**

### Cases

*Aguilar v. Melkonian Enters., Inc.*, No. 05-0032-OWW-LJO, 2007 U.S. Dist. LEXIS 8146, at *10-13 (E.D. Cal. Jan. 24, 2007)..................................................................................................... 15

*Bacon v. Honda of Am. Mfg., Inc*., 370 F.3d 565, 570 (6th Cir. 2004)............................................ 12

*Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) .................................................... 12

*Bird v. Lida*, 681 A.2d 399, 403 (Del Ch. 1996) ............................................................................. 20

*Chrysler Corp. v. Dann*,
223 A.2d 384 (Del. 1966) ................................................................................................... 18

*Cohn v. Nelson*, 375 F. Supp. 2d 844, 865 (E.D. Mo. 2005) ........................................................... 22

*Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ................................................................ 14

*Edwards v. Benson, et al.*, No. 2:13-cv-00330-BSJ (D. Utah) ........................................................... 9

*Garland v. Cohen & Krassner*, No. 08-cv-4626, 2011 U.S. Dist. LEXIS 136622 (E.D.N.Y. Nov. 29, 2011) ......................................................................................................................................... 24

*Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982) .......................................................................... 12

*Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973) ..................................................................... 14

*Granada Invest., Inc.* ........................................................................................................................ 11

*Granada Invest., Inc. v. DWG Corp*., 962 F.2d 1203, 1205 (6th Cir. 1992)...................................... 6

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *10-12 (E.D. Mich. Dec. 12, 2013) .......................................................................................................... 8

*Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ...................................................... 11

*Hancock v. Debney, et al.*, No. A-13-675900-C (District Court, Clark County, Nevada)................... 10

*In re Activision Blizzard, Inc. Stockholder Litig.*, 86 A.3d 531, 548 (Del. Ch. Feb. 21, 2014) ......... 20

*In re American Medical Systems, Inc. ("AMS")*, 75 F.3d 1069, 1079 (6th Cir.1996)....................... 12

*In re BankAmerica Corp. Sec. Litig.*,
210 F.R.D. 694 (E.D. Mo. 2002) ......................................................................................... 10

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765-766 (S.D. Ohio) ......................... 21

*In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 838 (W.D. Pa. 1995) ......................................... 7

*In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *28 (Del. Ch. May 6, 2010) ......................................................................................................................................... 15

*In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ............................................................................................................................................. 23

*In re Emerson Radio S'holder Deriv. Litig.*, No. 3392-VCL, 2011 Del. Ch. LEXIS 50, at *17-18 (Del. Ch. Mar. 28, 2011)........................................................................................................................ 18

*In re Intek Global Corp.*, No. 17207, Tr. at 36-37, Strine, V.C. (Del. Ch. Apr. 24, 2000)................. 22

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) .............................................. 8

*In re PIMCO Advisors Holdings, L.P. S'holders Litig.*, Consol. C.A. No. 17511, Transcript at 68-69, Lamb, V.C. (Del. Ch. May 3, 2000) ..................................................................................... 22

*In re Schering-Plough Corp.*,
2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012) ......................................................... 11

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ....................................................................................... 10

*In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012)...... 13

*Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-10612013 U.S. Dist. LEXIS 74201, at *16 (S.D. Ohio May 25, 2013) ........................................................................................................................... 16

*Kleba v. Dees, et al.*, No. 3-1-13 (Circuit Court, Knox County, Tennessee)..................................... 10

*McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 U.S. Dist. LEXIS 22158, at *9, 12-13 (S.D. Ohio June 2, 1999) .............................................................................................................. 6

*Moses v. Pickens*,
  1982 Del. Ch. LEXIS 486 (Del. Ch. Nov. 10, 1982) ........................................................ 16

*Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) .................................................................... 8

*Nottingham Partners v. Dana*, 564 A.2d 1089, 1094-97 (Del. 1989) ...................................... 15

*O'Connor v. AR Res., Inc.*, No. 3:08-cv-1703, 2012 U.S. Dist. LEXIS 861 (D. Conn. Jan. 4, 2012) ........ 24

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292, 301 (M.D. Pa. 1995) .................................... 10

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*, 2012 WL 664827, at *3-4 (D.N.J. Feb. 28, 2012) ...... 18

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1197 (6th Cir. 1974) .......................................... 15

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *41 (Del. Ch. Jan. 2, 2009) ......................................................................................................... 17

*Sanders v. Wang*,
  2000 WL 34015564 (Del. Ch. June 22, 2000) ................................................................ 16

*Scherer v. Lu, et al.*, No. 1:13-cv-00358-GMS (D. Del. Sept. 9, 2014) .................................... 18

*Scherer v. Lu, et al.*, No. 1:13-cv-00358-GMS (D. Del.) ........................................................ 9

*Seinfeld v. Coker*, 847 A.2d 330, 333 (Del. Ch. 2000) ........................................................ 22

*Senter v. GMC*, 532 F.2d 511, 524-25 (6th Cir. Ohio 1976) .................................................. 14

*Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *53 n.3 (E.D. Mich. Oct. 18, 2010) ...................................................................................... 8, 10

*Staal v. Tisch*, No. 1:12-cv-00365-SLR (D. Del. Nov. 5, 2013) .............................................. 18

*Stinson v. Delta Mgmt. Assocs.*, No. 1:13-cv-238, 2014 U.S. Dist. LEXIS 109836, *6 (S.D. Ohio Aug. 8, 2014) .................................................................................................. 7, 9, 24

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990) ...................................................................................... 11

*Sugarland Indus. v. Thomas*,
  420 A.2d 142 (Del. 1980) .......................................................................................... 16

*Swigart v. Fifth Third Bank*, No. No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *11 (S.D. Ohio July 11, 2014) ................................................................................................... 11, 16

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) ........................ 15

*UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) .............................................................. 6

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ...................................................... 13

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D. Ky. 1992) ............................. 11

## Statutes

Fed. R. Civ. P. 23(a) .......................................................................................................... 12

Fed. R. Civ. P. 23(b) .......................................................................................................... 14

Fed. R. Civ. P. 23(e) .......................................................................................................... 6

Rule 23(a)(2) ...................................................................................................................... 13

## Other Authorities

7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1839 ........................................ 6

Richard Posner, ECONOMIC ANALYSIS OF LAW 21.9, at 534-35 (3d ed. 1986) ................................ 21

## I.     **PRELIMINARY STATEMENT**

Plaintiff Terry Monson ("Plaintiff") submits this memorandum of law in support of his unopposed motion for final approval of the proposed settlement (the "Settlement").   The Settlement, which provides substantial benefits to Associated Estates Realty Corp. ("AERC" or the "Company") and AERC's shareholders, requires: (i) AERC's Chief Executive Officer, Mr. Jeffrey Friedman ("Friedman"), to relinquish a significant number of stock options that he allegedly received improperly and potentially in violation of the Company's 2011 Equity-Based Award Plan ("2011 Plan"); and (ii) AERC's Board of Directors ("Board") to implement substantive corporate governance measures designed to protect against the occurrence of similar violations in the future.

The Settlement also provides for an agreed-upon award for attorneys' fees.  Following negotiations regarding the aforementioned substantive relief, AERC agreed that it would pay Plaintiff's attorneys an award of $300,000.  AERC also agreed that Plaintiff's attorneys would pay Plaintiff an incentive fee in the amount of $2,500.

Having received preliminary approval from the Court on October 10, 2014, Plaintiff now seeks final approval.  For the reasons set forth herein, Plaintiff respectfully requests that the Court grant the unopposed motion in its entirety.

## II.     **FACTS**

### A.     Background

AERC's Board adopted (with shareholder approval) the 2011 Plan in 2011.  ¶ 19.[1] According to the language of the 2011 Plan, no individual participant could be "granted Stock options or other Awards under the [2011] Plan with respect to an aggregate of more than 125,000

---

[1] "¶ __" and "¶¶ __" refers to paragraphs in the Plaintiff's Verified Shareholder Derivative and Class Action Complaint (the "Complaint") (Dkt. 1).

1

[s]hares" during any calendar year, with "Awards" being defined to include any type of share-based award.  ¶¶ 22-24.

In 2012, AERC's Executive Compensation Committee granted to AERC's Chief Executive Officer, Friedman, awards of 63,714 restricted shares and 125,000 stock options.  ¶¶ 26-28.

In 2013, the following year, AERC's Executive Compensation Committee granted to Friedman awards of 250,031 restricted shares.  ¶¶ 29-31.

In 2014, the Board adopted (with shareholder approval) the AERC Amended and Restated 2011 Equity-Based Award Plan (the "Amended/Restated 2011 Plan").  ¶ 34.  The Amended/Restated 2011 Plan increased to 500,000 the annual limit on stock options and share appreciation rights awarded to any individual participant.  ¶ 36.

B.    Plaintiff's Complaint

From Plaintiff's perspective, AERC, Friedman, and other members of the Board had awarded Friedman a number of equity-based awards in excess of the Company's then-existing equity-based award plan, *i.e.*, the 2011 Plan, and had therefore breached their fiduciary duties to the Company and/or its shareholders.  Consequently, Plaintiff filed suit on July 3, 2014 (the "Action").

Plaintiff's Complaint asserted derivative claims on behalf of AERC as well as direct claims on behalf of Plaintiff and other similarly situated shareholders.  The derivative claims alleged generally that: AERC's Board had breached its fiduciary duties to the Company and shareholders: (i) by granting the share-based awards to Friedman in 2012 and 2013 in excess of the individual annual limits; (ii) by wasting corporate assets through making the grants in 2012 and 2013; and (iii) by unjustly enriching Friedman to the extent that the 2012 and 2013 awards

2

exceeded the applicable individual limits.  Plaintiff's direct claim, which he asserted individually and on behalf of all owners of AERC common stock as of March 19, 2014 (the "Class"), alleged that AERC's Board breached its fiduciary duty of candor by not disclosing in the proxy statement for AERC's 2014 annual shareholder meeting (the "2014 Proxy") that the 2012 and 2103 awards to Friedman had exceeded the applicable individual limits and by creating a misleading impression as to the comparison between the scope of the individual limits in the 2011 Plan and the Amended/Restated 2011 Plan.

Unbeknownst to Plaintiff at the time he filed the Complaint, the Board had adopted a resolution in February 2012 (subsequent to the equity-based awards granted to Friedman in 2012) which purportedly amended the 2011 Plan by clarifying that the 125,000 share annual individual limitation applied only to stock options and share appreciation rights and not to any other type of share-based award (the "2012 Resolution").  To the extent the 2012 Resolution in and of itself was insufficient to modify the terms of the 2011 Plan, the Board formally and/or officially effected the increase of equity-based award limits via the 2014 Proxy and Amended/Restated 2011 Plan.

C.     Settlement

Although the defendants disagreed as to whether the Plaintiff would ultimately prevail, they did recognize the thrust of Plaintiff's Complaint and acknowledged the merit underlying its allegations.  Rather than proceed with the litigation, the parties agreed to commence arm's length settlement negotiations so as to save time, money, and aggravation.   Plaintiff began the negotiations by issuing a formal, written demand.  The demand requested, among other things: the rescission of all awards granted to Friedman in excess of the 2011 Plan's individual award limit; a restriction against re-issuing Friedman any share-based awards for the purpose of recompensation; disclosure to AERC's shareholders regarding the awards in question;

3

engagement of an independent body to analyze equity award procedures; and designation of a monitor to oversee equity awards to prevent the occurrence of executive compensation award violations in the future.

The defendants responded to Plaintiff's demand first by alerting Plaintiff to the existence of the 2012 Resolution.  Once certain confidentiality agreements were in place, the defendants provided Plaintiff with the pertinent portion of the Board meeting minutes confirming the existence of the 2012 Resolution and the date of its adoption.

The parties then engaged in multiple communications, both written and oral and over the space of several weeks, regarding the 2012 Resolution's application to the 2011 Plan; specifically, whether and to what extent the 2012 Resolution validated Friedman's 2012 and/or 2013 awards.  At end, the parties agreed to the following Settlement terms:

(i)     Friedman shall voluntarily relinquish and AERC will rescind 63,714 stock options awarded to him in 2012, the exact amount of share-based awards awarded in excess of the 125,000 limit under the 2011 Plan;

(ii)    Friedman will acknowledge his voluntary relinquishment and the rescission of the 63,714 stock options;

(iii)   AERC will not award Friedman any stock options for a period of twelve months following the resolution of this Action;

(iv)    AERC will form a committee of the Board composed of independent directors which, in conjunction with AERC's General Counsel, will review the processes by which share-based awards are granted.  The committee will (a) review the Executive Compensation Committee's charter and other governing documents, (b) review applicable share-based compensation plans, and (c) develop a checklist of key provisions to be considered by the Executive Compensation Committee before granting any share-based awards;

(v)     AERC's General Counsel, or an employee of the Company designated by the General Counsel, will analyze and confirm to the Executive Compensation Committee as to any contemplated share-based award, in advance of its being granted, that: (a) the overall number of shares remaining available under the applicable plan is sufficient to cover the proposed award, and (b) the annual limit per individual set forth in the

4

applicable plan would not be exceeded by making the contemplated award;

(vi)    All corporate governance measures implemented pursuant to the Settlement will be maintained for a period of not less than three years;

(vii)   In consideration of the above-terms, Plaintiff, on behalf of himself and members of the settlement Class, and derivatively on behalf of the Company, will release the defendants from all known and unknown claims arising from the allegations asserted in the Complaint; and

(viii)  Provided the Court grants final approval of the proposed Settlement, the Court will retain jurisdiction with respect to the implementation and enforcement of the Settlement.

Separate and apart from the negotiation of the above terms, the parties agreed to an award for attorneys' fees. The agreed-upon award provides for AERC to pay Plaintiff's counsel $300,000. Further, as an incentive award, Plaintiff's counsel will pay Plaintiff $2,500 (which is to be paid entirely from Plaintiff's counsel's award of $300,000).

Plaintiff moved for preliminary approval of the Settlement on October 3, 2014.[2] The defendants did not oppose the motion. On October 10, 2014, the Court granted Plaintiff's motion and issued an order preliminarily approving the Settlement (the "Preliminary Approval Order"). A copy of the Preliminary Approval Order is attached to the Declaration of Adam M. Apton (the "Apton Decl.") as Exhibit "1" which is filed in support of this Motion.

D.    Notice

The Preliminary Approval Order required the parties to provide notice of the Settlement: "[n]ot later than ten (10) calendar days following the entry of the [Preliminary Approval Order], [AERC] will cause a copy of the Summary Notice . . . to be published once in *Investor's Business Daily*"; and "[n]ot later than ten (10) calendar days following the entry of the [Preliminary Approval Order], [AERC] shall disseminate the Notice to Current [AERC]

---

[2] Plaintiff's motion contained a typographical error. Plaintiff submitted a corrected motion for preliminary approval on October 9, 2014.

5

Shareholders and members of the Class by causing the Notice . . . to be furnished to the United States Securities and Exchange Commission via a current report on Form 8-K.  As further such dissemination, [AERC] and [Plaintiff's counsel] each shall cause the Notice and Stipulation to be posted on their respective websites."  (Preliminary Approval Order, Dkt. 19, ¶¶ 5-6).  Plaintiff's counsel and, upon information and belief, AERC have complied with these directives.  To date, no one has objected to the Settlement.

III.    **ARGUMENT**

      A.    <u>The Court Should Grant Final Approval of the Settlement</u>

Federal Rule of Civil Procedure 23.1(c) provides that a "derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  Similarly, a class action cannot be dismissed or settled without the Court's approval.  *See* Fed. R. Civ. P. 23(e); *McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 U.S. Dist. LEXIS 22158, at *9, 12-13 (S.D. Ohio June 2, 1999) (similar substantive standards applied when approving derivative and class settlements) (citing 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1839).

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'  Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (citations omitted); *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (in context of derivative settlement, court considered "likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members") (citations omitted).

6

Considering these factors, the Settlement is reasonable, fair, and adequate and merits final approval.

      1.    *The Settlement Was Not Obtained Through Fraud or Collusion*

The parties achieved the Settlement by way of arm's length negotiations. These negotiations, which were conducted by experienced counsel on behalf of both parties, occurred over the course of several weeks. Notably, the parties negotiated the Settlement independent of attorneys' fees. The counsel involved in this Action along with the manner and method in which they negotiated the Settlement evidences an absence of fraud and/or collusion. *Stinson v. Delta Mgmt. Assocs.*, No. 1:13-cv-238, 2014 U.S. Dist. LEXIS 109836, *6 (S.D. Ohio Aug. 8, 2014).

      2.    *The Complexity, Expense, and Likely Duration of the Litigation Support Settlement*

Achieving the Settlement that they did, the parties were able to save time, money, and avoid burdening the Court's docket. The parties addressed the merits of their respective claims and defenses immediately following the commencement of this Action. The defendants provided Plaintiff with evidence demonstrating the Board's adoption of the 2012 Resolution in February 2012. Through the negotiations that followed, the parties were able to evaluate their respective claims and defenses without engaging in a complex and expensive course of discovery and pre-trial briefing concerning the impact of board resolutions on shareholder-approved executive compensation plans. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations. Even after trial is concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 822, 838 (W.D. Pa. 1995); *Inter-Op*

*Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 359 (attendant risks of litigation weighed in favor of preliminary approval).

### 3.  *The Absence of Formal Discovery Does Not Disqualify Settlement*

"'[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.'"  *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *10-12 (E.D. Mich. Dec. 12, 2013) (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *53 n.3 (E.D. Mich. Oct. 18, 2010) (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions") (quoting *Newby*, 394 F.3d at 306 ("[f]ormal discovery [is not] a necessary ticket to the bargaining table")).

Before the litigation even started, Plaintiff's counsel engaged in an in-depth review of AERC's corporate disclosure documents filed with the U.S. Securities & Exchange Commission, including the Company's past proxy statements and equity-based incentive plans.  Obviating the need for any further significant discovery, counsel for the defendants provided a critical piece of discovery that enabled the parties to evaluate the strengths and weaknesses of their respective claims and defenses.  The absence of formal discovery does not undermine the value and integrity of the settlement and the manner in which it was obtained.  Rather, the terms of the Settlement demonstrate counsels' "full understanding of the strengths and weaknesses of their case." *Griffin*, 2013 U.S. Dist. LEXIS 173702 at *11-12.

8

4. *Likelihood of Success on the Merits*

Plaintiff believes the claims asserted in the Action have substantial merit.  However, Plaintiff recognizes and acknowledges the significant risk and expense associated with continuing to litigate this complex, potentially lengthy matter against the defendants through trial and, possibly, through appeal.  Plaintiff is also mindful of the burden of proof hurdles and the various defenses available to the defendants under applicable Ohio law and in light of the particular facts now known (*e.g.*, the 2012 Resolution).  Settlement at this time eliminates the substantial litigation risks (including the risk of no recovery or other benefit), while ensuring the Company and its shareholders immediately receive the substantial benefits of relinquishment of 63,714 stock options granted to Friedman in 2012 (prior to the 2012 Resolution) and the adoption of certain corporate governance reforms directed toward the administration of the Company's equity plans.  Following a thorough investigation, analysis and evaluation of the relevant facts, allegations, defenses, controlling legal principles, and litigation risks intrinsic to shareholder actions of this kind generally, as well as present in this Action specifically, the parties decided that the Settlement was fair, reasonable, adequate, and in the best interests of all parties.  *See Stinson*, 2014 U.S. Dist. LEXIS 109836 at *7-9 (acknowledging value obtained by settlement outweighed potential of obtaining additional benefits at trial).

5. *Counsel for the Parties Recommends the Settlement*

Proposed Class counsel has extensive experience in litigating shareholder rights cases. Levi & Korsinsky LLP has secured favorable settlements in cases involving similar facts in courts throughout the Country.  *See*, *e.g.*, *Scherer v. Lu, et al.*, No. 1:13-cv-00358-GMS (D. Del.); *Edwards v. Benson, et al*., No. 2:13-cv-00330-BSJ (D. Utah); *Kleba v. Dees, et al.*, No. 3-

1-13 (Circuit Court, Knox County, Tennessee); *Hancock v. Debney, et al.*, No. A-13-675900-C (District Court, Clark County, Nevada).

Similarly, the defendants retained the prominent law firm of Jones Day to defend them in this Action. Jones Day is widely known as one of the best law firms in the Country and, unarguably, has significant experience defending the most complex of complex class action and shareholder derivative cases.

The fact that both counsel were able to successfully negotiate the Settlement weighs in favor of granting final approval. *See*, *e.g.*, *Sheick*, 2010 U.S. Dist. LEXIS 110411 at *51 (counsel's judgment "is entitled to significant weight, and supports the fairness of the class settlement"); *Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("the opinions and recommendation of such experienced counsel are indeed entitled to considerable weight").

### 6.    *AERC Shareholders Have Not Objected to the Settlement*

The response to the Settlement also supports final approval. "The reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990). AERC shareholders received the required notice, which provided a full three week window for objections. *See*, *e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 707-08 (E.D. Mo. 2002) (notice sufficient where "[t]here were three to four weeks between the mailing of class notice and the last date to object").

While even a small number of objections is considered convincing evidence of a proposed settlement's fairness, reasonableness, and adequacy, here there has been not one objection filed with the Court or sent to Plaintiff's or AERC's counsel. *See Stoetzner v. U.S.*

*Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding that "only" 29 objections out of a 281 member class "strongly favors settlement").  The absence of objections "militates strongly in favor of a finding that the [s]ettlement is fair and reasonable, and is entitled to nearly dispositive weight."  *Schering-Plough*, 2012 WL 1964451, at *4 (citation omitted); *accord Swigart v. Fifth Third Bank*, No. No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *11 (S.D. Ohio July 11, 2014).

7.    *The Settlement Accords with Public Policy*

Public policy favors settlement of class action lawsuits.  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D. Ky. 1992)).  Pursuant to the terms of the Settlement, AERC and its shareholders are receiving a substantial benefit by way of the rescission of over 63,000 stock options and improved corporate governance designed to avoid the future occurrence of similar executive equity plan violations.  The Settlement also serves the public interest because it promotes corporate fiduciary duties and emphasizes their importance to shareholders of Ohio corporations. *See Granada Invest., Inc.*, 962 F.2d at 1205 ("Settlements are welcome in cases such as this because litigation is notoriously difficult and unpredictable." (quotations omitted)).

*     *     *

Consideration of the above factors weighs in favor of granting final approval over the Settlement.

**B.**    <u>The Court Should Certify the Class for Settlement</u>

The Settlement is fair, reasonable, and adequate.  The only way to realize it, however, is through the certification of a settlement class.  As discussed more fully below, the settlement

11

class satisfies the requirements of Rule 23(a) and (b) and should therefore be certified for the purposes of settlement.

> 1.  *The Elements of Rule 23(a) Are Satisfied*

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  *See*, *e.g.*, *Gen. Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004).  Here, all four elements easily are satisfied.

> (a) Numerosity.

It is not possible to accurately determine the number of potential class members at this time.  However, as of March 19, 2014 (the record date for the 2014 annual shareholder meeting), AERC had outstanding 57,566,529 common shares.  The number of individuals and/or entities owning these shares is likely in the tens if not hundreds of thousands.  Further, AERC's shareholders likely reside throughout the country and, potentially, across the globe.  There can be no dispute, therefore, that the settlement Class meets the numerosity requirement.  *See In re American Medical Systems, Inc. ("AMS")*, 75 F.3d 1069, 1079 (6th Cir.1996) (citation omitted); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

> (b) Commonality.

The commonality requirement of subsection (a)(2) is easily met.  The central underlying issue posed by this litigation, which in turn feeds into the disclosure question, is whether

12

AERC's Executive Compensation Committee violated the terms of the 2011 Plan when it awarded Friedman shares and/or options in excess of the 125,000 share-based figure.  Given the presence of this common question, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met.  *See In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012) (*quoting Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)); *In re Inter-Op Hip Prosthesis Liability Litig*., 204 F.R.D. at 341 (N.D. Ohio 2001).

(c) Typicality.

Individual variations among the members of the settlement Class do not exist.  The claims of Plaintiff and all other AERC shareholders are predicated on the Board's alleged violation of the 2011 Plan and, in turn, the relationship between those asserted violations and disclosures in the 2014 Proxy.  The defendants' potential liability for the resulting injury to each member of the settlement Class does not depend on any individual circumstance of any particular member of the settlement Class.  Rather, Plaintiff alleges that the defendants breached fiduciary duties owed to the Company and/or otherwise damaged the Company by awarding stock options to Friedman in excess of the share-based award limits set forth in the 2011 Plan and, in turn, impaired the accuracy of disclosures made to the shareholder class as a whole.  The common issues necessarily share the same degree of centrality to Plaintiff's claims such that in litigating the liability issues, Plaintiff reasonably can be expected to advance the interests of all absent members of the settlement Class in a favorable determination with respect to each such issue.  *See In re Inter-Op Hip Prosthesis Liability Litig*, 204 F.R.D. at 342.  The typicality requirement of the rule is satisfied.

13

(d) Adequacy.

Named Plaintiff Terry Monson is more than adequate to serve as the representative for the settlement Class (hereinafter the "Class Representative").  Here, the Class Representative and settlement Class members are equally interested in detailing to the Court and a jury the alleged violations of the 2011 Plan committed by AERC and the Board, and are further committed to obtaining appropriate relief from the defendants.  To this end, Plaintiff has obtained an advantageous settlement that treats all members of the settlement Class in the same fashion, and provides real value to the Company.  *See Thacker*, 259 F.R.D. at 268.  There is nothing to suggest that the proposed Class Representative has interests antagonistic to those of the absent settlement Class members in the vigorous pursuit of the Action against the defendants.  *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000).

In addition to having common interests with the unnamed class members, the Class Representative has vigorously prosecuted the class action through qualified counsel.  *Senter v. GMC*, 532 F.2d 511, 524-25 (6th Cir. 1976) (quoting *Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).  As discussed previously, Levi & Korsinsky LLP has significant experience in the area of shareholder rights.  A copy of Levi & Korsinsky LLP's Firm Resume is attached to the Apton Decl. as Exhibit "2".  The adequacy requirement, for both Class Representative and Levi & Korsinsky LLP as Class counsel, is satisfied for certification.  *See Thacker*, 259 F.R.D. at 268; *In re Inter-Op Hip Prosthesis Liability Litig*., 204 F.R.D. at 343.

2.      *The Elements of Rule 23(b) Are Satisfied*

In addition to satisfying the four prerequisites of Rule 23(a), a class action must meet at least one of the criteria set forth in Rule 23(b).  *See* Fed. R. Civ. P. 23(b).  Plaintiff alleged that the defendants breached their fiduciary duties to the Company and AERC's shareholders by

improperly awarding Friedman stock options in excess of the shareholder-approved limits and then not adequately treating this circumstance in its 2014 Proxy disclosure.  Under these circumstances, class certification is appropriate under Rule 23(b)(1) and (b)(2) because all members of the settlement Class are situated identically with respect to every issue of liability, the defendants' actions are identical vis-à-vis each individual member of the settlement Class, and to litigate the matters separately would risk exposing the defendants to different standards of conduct and/or adjudications.  *See*, *e.g.*, *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458-59 (2d Cir. 1982) (affirming certification of class action pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B) and (b)(2) where plaintiff alleged, inter alia, that defendants disseminated materially false and misleading information statement and breached fiduciary duties to stockholders); *In re Cox Radio, Inc. S'holders Litig.*, No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *28 (Del. Ch. May 6, 2010) ("actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)"); *Aguilar v. Melkonian Enters., Inc.*, No. 05-0032-OWW-LJO, 2007 U.S. Dist. LEXIS 8146, at *10-13 (E.D. Cal. Jan. 24, 2007) (class certified under Fed. R. Civ. P. 23(b)(1) and (b)(2) for breach of fiduciary duty claims); *Nottingham Partners v. Dana*, 564 A.2d 1089, 1094-97 (Del. 1989) (certification under (b)(2) proper where "complaint alleged breaches of fiduciary duty and disclosure violations").

C.  The Agreed-Upon Fee Should Be Granted Because Plaintiff Has Conferred a Substantial Benefit on AERC and Its Shareholders

An award for attorneys' fees is appropriate in this Action because Plaintiff's lawsuit created a "substantial benefit" to the Company and its shareholders.  *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1197 (6th Cir. 1974).  Plaintiff's counsel expended over 192 hours in the course of this Action.  Counsel's work has resulted in a settlement which provides

for the cancellation of stock options worth approximately $375,000 and the institution of strong corporate governance measures that will protect against the risk of future compensation plan violations.[3]  In recognition, AERC agreed to pay counsel $300,000.  This fee award is both important and appropriate in light of policy and controlling precedent.

           1.     *Percentage of the Fund*

Pursuant to the terms of the Settlement, Friedman is relinquishing the stock option awards he received in 2012 that were in excess of the annual individual limit.  Ohio courts routinely look to Delaware law on matters of corporate law, and Delaware courts have routinely found that the return of "stock options improperly given" confers a corporate benefit that can be "measured in dollars."  *Sugarland Indus. v. Thomas*, 420 A.2d 142, 152 (Del. 1980); *accord Sanders v. Wang*, 2000 WL 34015564, at *3 (Del. Ch. June 22, 2000); *Moses v. Pickens*, 1982 WL 17825, at *1 (Del. Ch. Nov. 10, 1982).  Accordingly, by way of this Action, Plaintiff has created a common fund in the amount of $371,250, the fair value of the stock options being rescinded.

In connection with the creation of this common fund, Plaintiff seeks an award in the amount of $111,375, or 30% of the common fund amount of $371,250.  *See Swigart*, 2014 U.S. Dist. LEXIS 94450 at *19 (confirming 33% as "well within range of fees"); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-10612013 U.S. Dist. LEXIS 74201, at *16 (S.D. Ohio May 25, 2013) (approving 33%).

---

[3] According to AERC's 2014 Proxy, the fair value of the stock options granted in 2012 equaled $371,250.  2014 Proxy, p. 21.

2.     *Common Benefits of Settlement*

In addition to the immediate savings of $375,000 due to the cancellation of Friedman's 2012 stock options, AERC and its shareholders are receiving the benefit of a restriction against re-granting stock options Friedman and the following corporate governance measures:

- A new subcommittee of AERC's Board composed of independent directors.  This new subcommittee, in conjunction with AERC's General Counsel, will (a) review the Executive Compensation Committee's charter and other governing documents, (b) review applicable share-based compensation plans, and (c) develop a checklist of key provisions to be considered by the Executive Compensation Committee before granting any share-based awards; and

- AERC's General Counsel (or an appointee) will analyze and confirm to the Executive Compensation Committee as to any contemplated share-based award, in advance of its being granted, that: (a) the overall number of shares remaining available under the applicable plan is sufficient to cover the proposed award, and (b) the annual limit per individual set forth in the applicable plan would not be exceeded by making the contemplated award.

Significantly, these corporate governance measures will be implemented and maintained for a period of not less than three years following the Settlement.

These corporate governance measures, or "corporate therapeutics," qualify as a common benefit and justify an award for attorneys' fees.  *See*, *e.g.*, *Mills*, 396 U.S. at 395 ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *41 (Del. Ch. Jan. 2, 2009) (measures "designed to prevent future wrongful option grants" constitute a benefit that can be "properly considered by the Court in determining a fee award and in the past has served as the sole basis for a fee award").

At the very least, these corporate governance measures are worth a fee award of $200,000 due to the fact that AERC will now have in place long-term cost-saving policies.  Specifically,

had Plaintiff not filed this Action, there would be no reason to believe that the Board would have complied with the terms of the Amended/Restated 2011 Plan's annual per-person limit. However, by negotiating the Settlement and, in particular, advocating for the corporate governance measures listed above, Plaintiff has likely prevented future excessive stock-based awards which, in turn, saves the Company and its shareholders money. Courts routinely assign value to such "therapeutic relief," and the amount Plaintiff seeks herein is in line with prior similar decisions. *See Scherer v. Lu, et al.*, No. 1:13-cv-00358-GMS (D. Del. Sept. 9, 2014) (awarding $250,000 for therapeutics relating to stock options cancellation) (Apton Decl., Ex. "3"); *Staal v. Tisch*, No. 1:12-cv-00365-SLR (D. Del. Nov. 5, 2013) (awarding attorneys' fees and expenses of $750,000 where "shareholders (as well as the public) have materially benefitted from the corporate governance changes effected through the settlement") (Apton Decl., Ex. "4"); *Plymouth Cnty. Contributory Ret. Sys. v. Hassan*, No. 08-1022 (DMC) (JAD), 2012 U.S. Dist. LEXIS 26334, at *3-4 (D.N.J. Feb. 28, 2012) (approving attorneys' fees of $5.1 million where settlement included institution of corporate governance reform "designed to prevent a recurrence of the alleged harm"); *In re Emerson Radio S'holder Deriv. Litig.,* No. 3392-VCL, 2011 Del. Ch. LEXIS 50, at *17-18 (Del. Ch. Mar. 28, 2011) (estimating that but for new policies, there was a 25% chance of recurrence of the challenged misconduct, and therefore valuing new policies at 25% of the funds recovered); *United Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 28, 2005); *Chrysler Corp. v. Dann*, 223 A.2d 384, 388-390 (Del. 1966) (awarding derivative counsel $450,000 in fees for conferring a benefit consisting of change in the company's compensation plan that will "benefit [the company] in the long run").

### 3.  *The Fee Is Supported by the Ramey Factors*

AERC has agreed to pay Plaintiff's counsel $300,000, which is less than the aggregate amount of the fees related to each the rescission of the stock options ($111,375) and new corporate governance reforms ($200,000).  The Sixth Circuit considers the following factors when determining the reasonableness of a requested fee: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of all counsel.  *Ramey*, 508 F.2d at 1196.  Consideration of these factors confirms that the requested agreed-upon fee of $300,000 is appropriate.

(a)  The value of the benefits rendered to the Class.

Courts consider the value of the settlement to the class under the common benefit doctrine.  *See Smillie*, 710 F.2d at 275 (court must consider the "value of the benefit rendered to the class"); *Enterprise Energy Corp.*, 137 F.R.D. at 249 (same).  District courts in this Circuit widely regard this factor as the most important.  *See Basile,* 640 F.Supp. at 700 (finding that the value of the benefit rendered is the most important factor); *Bowling,* 922 F.Supp. at 1280 ("Most important among these factors are the value of the benefit rendered to the plaintiff class and the value of Counsel's services on an hourly basis").

Here, Plaintiff's lawsuit resulted in both non-economic and economic benefits to the Class.  By filing and prosecuting this action, Plaintiff successfully caused the rescission of stock options worth approximately $375,000 and implementation of several significant corporate governance reforms targeted at preventing the exact harm underlying this Action.

19

The award being sought will not diminish the benefits being achieved in this case.  The benefit to AERC and its shareholders will be realized by protecting against the risk of granting improper equity-based awards in the future.  Accordingly, the requested award is not falling upon the shoulders of AERC shareholders, as would be the case in a traditional common fund case where the fee and expense reimbursement would be subtracted from monies that would otherwise be distributed to class members.

The economic and non-economic benefits conferred on AERC and its shareholders support the agreed-upon fee.

> (b) Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others.

Approving the agreed-upon fee would acknowledge the important role attorneys play in the context of corporate monitoring.  *See Bird v. Lida*, 681 A.2d 399, 403 (Del Ch. 1996) ("The derivative suit offers to risk-accepting shareholders and lawyers a method and incentives to pursue monitoring activities that are wealth increasing for the collectivity (the corporation or the body of its shareholders).").  If Plaintiff's counsel was unable to earn contingency fees in connection with these monitoring services which lead to the successful litigation outcome here, they would not have undertaken those efforts and it is likely that "there will be less shareholder monitoring expenditures than would be optimum" for companies like AERC.  *In re Activision Blizzard, Inc. Stockholder Litig.*, 86 A.3d 531, 548 (Del. Ch. Feb. 21, 2014) (quoting *Bird*, 681 A.2d at 403).  There would have been no one to hold the Company accountable, and the circumstance would have likely gone unaddressed.

Furthermore, rewarding attorneys in shareholder rights cases is important because absent class actions and derivative lawsuits most individuals would lack the resources to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation.

20

*In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765-766 (S.D. Ohio) (citing *In re Telectronics Pacing Systems, Inc.,* 137 F. Supp.2d at 1043 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling ... claimants to pool their claims and resources" to "achieve a result they could not obtain alone.")).

Here, where a portion of the requested relief was equitable and non-monetary in nature, the need to reward class counsel and incentivize class representatives is even greater.  Rewarding attorneys in instances such as this one is of special importance, as without proper compensation shareholders will face significant difficulty in attempting to retain counsel to litigate these types of cases.

(c) The contingent nature of the fee.

Plaintiff's attorneys' fees include consideration of their contingent nature.  *Smillie*, 710 F.2d at 275 (consideration must be given to "whether the services were undertaken on a contingent fee basis.").  Indeed, plaintiff attorneys traditionally earn a premium over typical hourly rates in light of the risks inherent in contingency basis work.  *See* Richard Posner, ECONOMIC ANALYSIS OF LAW 21.9, at 534-35 (3d ed. 1986).

Plaintiff's counsel accepted this case on a contingency fee basis and, therefore, have received no compensation or expense reimbursement during the course of this litigation. Because of the contingent nature of the representation in this matter, Plaintiff's counsel's fee and expense reimbursement have always been at risk and completely contingent on the result achieved.  Further, had Plaintiff's counsel not taken a role in this litigation, they would have been free to allocate their time and resources on other matters.  This further supports the fee and expense award requested herein.

21

(d) The value of the services on an hourly basis.

Plaintiff's counsel expended an aggregate 192.4 hours of attorney time prosecuting this case on behalf of the Class.  *See* Apton Decl. at ¶ 7.  The Apton Declaration contains a summary of the time spent by the attorneys who worked on this matter, the hours expended, and their current hourly billing rate.  Attached to the Apton Decl. as Exhibit "5" is a "Summary Billing Log" describing the work performed in this Action.  The work performed by Plaintiff's counsel was necessary, avoided duplication, and is responsible for achieving the relief obtained.  The regular hourly rates of Plaintiff's counsel multiplied by the number of hours expended results in a total lodestar of $108,550.  *See* Apton Decl. ¶ 7.

While the fee requested is greater than the lodestar, counsel should not be punished for having a quick victory.  *See Seinfeld v. Coker*, 847 A.2d 330, 333 (Del. Ch. 2000) (recognizing that fee awards should not be "structured" so as to "reward lawyers for needlessly prolonging litigation"); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844, 865 (E.D. Mo. 2005) (rewarding counsel for "benefit they created and their ability to resolve the litigation in an efficient manner, thereby conserving judicial resources" and "not[ing] the amount of the fee was negotiated at arm's-length between [counsel]").  Further, courts frequently "express[] reluctance to 'second-guess' the settling defendants' agreement to pay the fee, with the result that, while the Court must be satisfied as to its fairness and reasonableness, the Court's scrutiny can be less intensive." *Cohn*, 375 F. Supp. 2d at 865 (citing *In re Intek Global Corp.*, No. 17207, Tr. at 36-37, Strine, V.C. (Del. Ch. Apr. 24, 2000), *In re PIMCO Advisors Holdings, L.P. S'holders Litig.*, Consol. C.A. No. 17511, Transcript at 68-69, Lamb, V.C. (Del. Ch. May 3, 2000)).

22

(e) The complexity of the litigation.

Plaintiff's claims involved complicated facts concerning equity-based awards under various long-term incentive plans spanning several years, which required complex analyses of legal issues.  The questions of law and fact included the various fiduciary duties owed directly to AERC shareholders and the Company, the analysis of dense equity-based award plans, economic implications of the defendants' actions on the Company and AERC shareholders, and procedural considerations with regard to seeking relief.  Accordingly, the complexity of the case further supports the requested fee.

(f)  The professional skill and standing of all counsel.

Pursuing the claims in this litigation required the participation of highly skilled and specialized attorneys.  Plaintiff's counsel was faced with formidable opposition, as the defendants were represented by Jones Day, a very skilled and experienced law firm in securities and shareholder litigation, which were able to draw upon the exceptional resources of its nationally recognized law firm.  Courts have often recognized that the skill and abilities of defense counsel is a factor that may be considered when evaluating a fee request.  *See*, *e.g.*, *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

Plaintiff's counsel, Levi & Korsinsky LLP, is also highly experienced in shareholder rights litigation.  The perseverance, quality, and skill in the work performed by Plaintiff's counsel is evident through the significant non-economic and economic results brought about by this litigation.  Accordingly, the quality and skill involved in the services performed by Plaintiff's counsel supports the requested fee.

*          *          *

In sum, the above factors fully support the requested award.  Plaintiff's counsel litigated this matter on a contingent basis, despite significant risks and in the face of determined opposition.  Under these circumstances, Plaintiff's counsel should be entitled to the fair and reasonable award for attorneys' fees ($300,000).

      D.    <u>Plaintiff Should Receive an Incentive Payment</u>

Shareholders often realize the benefits of shareholder derivative action indirectly. Incentive payments are necessary to incentivize shareholders to serve in representative capacities.  Without this important role, shareholder litigation would be severely hampered and civil litigation against corporate wrongdoers would be severely hindered.  Here, Plaintiff seeks an incentive award of $2,500, which will be paid by Plaintiff's counsel from their award for attorney's fees.  The amount of Plaintiff's incentive award is reasonable and should therefore be approved.  *See Stinson*, 2014 U.S. Dist. LEXIS 109836 at *11-12 (approving $3,000 award to representative); *O'Connor v. AR Res., Inc.*, No. 3:08-cv-1703, 2012 U.S. Dist. LEXIS 861 (D. Conn. Jan. 4, 2012) (approving a $2,000 class representative fee to the named plaintiff); *Garland v. Cohen & Krassner*, No. 08-cv-4626, 2011 U.S. Dist. LEXIS 136622 (E.D.N.Y. Nov. 29, 2011) (approving class representative award of $3,000).

IV.      **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:

(1) granting final approval of the Settlement; (2) granting certification of the settlement Class for

settlement purposes; (3) confirming Levi & Korsinsky LLP as Class counsel; and (4) awarding

Plaintiff's counsel attorneys' fees in the amount of $300,000 and approving Plaintiff's incentive

award in the amount of $2,500.

Dated: November 4, 2014                      Respectfully submitted,

                                             JAMES D. WILSON LLC

                                             /s/ *James D. Wilson*
                                             James D. Wilson (Reg. No. 0041592)
                                             Rochelle L. Paley (Reg. No. 0042697)
                                             Aanchal Soni (Reg No. 0086334)
                                             29225 Chagrin Blvd., Suite 350
                                             Cleveland, Ohio 44122
                                             (216) 342-4138; Fax: (216) 342-4288
                                             jwilson@wilsonlawyers.com
                                             rpaley@wilsonlawyers.com
                                             asoni@wilsonlawyers.com

                                             *Attorneys for Plaintiff*

Of Counsel:

Nicholas I. Porritt, Esq.
Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121

4827-3884-5216, v. 2