# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARSHA SCHERER, derivatively on behalf of DIODES INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> KEH-SHEW LU, et al., <br><br> Defendants, <br> -and- <br><br> DIODES INCORPORATED, a Delaware Corporation, <br><br> Nominal Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 13-358-GMS |

## **ORDER**

WHEREAS, on March 5, 2013, the plaintiff Marsha Scherer ("Scherer") filed a
Shareholder Derivative and Class Action Complaint on behalf of Diodes Incorporated
("Diodes") alleging claims for breach of fiduciary duty, waste of corporate assets, and unjust
enrichment against the Diodes Board of Directors ("Defendants") and nominally against Diodes
for improperly granting stock options (D.I. 1);[1]

---

[1] The claims were directed to the granting of stock options to Diodes Chief Executive Officer and
President, Keh-Shew Lu ("Lu"). (D.I. 1, ¶¶ 2–3.) Under Diodes' 2001 Omnibus Equity Incentive Plan ("Incentive
Plan"), only 100,000 stock options could be granted to any plan participant—including Lu—within one calendar
year. (*Id.*, ¶ 2.) In 2009, the Diodes Compensation Committee issued Lu 222,000 stock options, and in 2010, 2011,
and 2012, the Compensation Committee issued Lu 196,000 options each year. (D.I. 25 at 6.) Although Defendants
contest that these grants were wrongful, the parties do not dispute that the Incentive Plan in place at the time of the
grants, by its terms, limited the number of options to 100,000 per year. (*Id.* at 5.)

Case 1:13-cv-00398-GMS   Document 33   Filed 09/09/14   Page 2 of 5   PageID #: 845

WHEREAS, on April 1, 2013, Defendants took action to effectively moot Scherer's complaint by canceling the options in question (D.I. 25 at 7);[2]

WHEREAS, on April 3, 2013, Diode and Defendants filed Answers to Scherer's Complaint (D.I. 6; D.I. 7.);

WHEREAS, on May 8, 2014, Defendants filed a Motion for Judgment on the Pleadings seeking dismissal of the Complaint on the grounds of mootness (D.I. 9);

WHEREAS, on May 17, 2013, the parties filed a Stipulation and Proposed Order whereby Defendants' Motion for Judgment on the Pleadings was withdrawn and the Complaint would be dismissed as moot, subject to Scherer's filing and adjudication of a motion for an award of attorneys' fees and costs (D.I. 14);

WHEREAS, presently before the court is Scherer's Motion for Attorneys' Fees and Reimbursement of Costs (D.I. 18), filed July 29, 2013, Diodes and Defendants' response thereto (D.I. 25), filed September 20, 2013, and Scherer's reply (D.I. 28), filed October 11, 2013;

WHEREAS, Scherer argues that attorneys' fees should be granted under the "substantial benefit" doctrine[3] because the attorneys' efforts in filing the derivative action led to Diodes' shareholders receiving a substantial benefit[4] (D.I. 19 at 6, 11–15);

WHEREAS, Scherer further argues that Defendants' actions to moot the lawsuit by cancelling the allegedly improper stock options do not bar an award of attorneys' fees if: (1) the

---

[2] Diodes and Lu reached an agreement whereby Lu would "assert no claim" to the stock options in excess of 100,000 per year, and the respective grants would be "deemed amended to reflect the . . . 100,000 share limitation." (D.I. 25 at 7.)

[3] *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393–94 (1970); *Kahan v. Rosenstiel*, 424 F.2d 161, 166–67 (3d Cir. 1970); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1252–53 (Del. 2012).

[4] Scherer argues that the restoration of the alleged improper stock options as a result of her derivative action created a common fund valued at $4.9 million for the benefit of Diodes' shareholders. (D.I. 19 at 11–12.) Moreover, Scherer argues that the lawsuit prevented the grant of further improper stock options in the future, saving approximately $2 million. (*Id.* at 12–13.) Finally, Scherer argues that the corrective disclosures made by the Defendants to Diodes' shareholders constituted a non-monetary but nonetheless substantial benefit. (*Id.* at 13–14.)

suit was meritorious when filed, (2) the Defendants took action that benefited the corporation before judicial resolution was achieved, and (3) the resulting corporate benefit was causally related to the lawsuit[5] (*Id.* at 7–15);

WHEREAS, Scherer finally argues that requested attorneys' fees are reasonable[6] (*Id.* at 15–20);

WHEREAS, Defendants argue that (1) Scherer's lawsuit was not meritorious when filed[7] (D.I. 25 at 10–11), (2) the litigation did not result in a substantial benefit to Diodes[8] (*Id.* at 11–15), and (3) the requested fees are not reasonable[9] (*Id.* at 15–19).

WHEREAS, having considered the party's positions as set forth in their papers, the pleadings, as well as the applicable law;

IT IS HEREBY ORDERED that:

---

[5] *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980).

[6] Scherer argues the total value of the cancelled stock options was $4.9 million, plus the additional $2 million for the potential excess grants in the future—$6.9 million. (D.I. 19 at 12–13). Scherer seeks 25% of this total value as fees, for $1,725,000. Additionally, Scherer seeks $250,000 attributable to the enhanced corporate disclosures. (*Id.* at 18.) Finally, Scherer requests $15,045 in actual attorney expenses. (*Id.* at 19.) The aggregate sum sought by Scherer is $1,990,045.

[7] Defendants argue the lawsuit was not meritorious when filed because Scherer failed to present demand or plead demand futility with particularity. *See* Fed. R. Civ. P. 23.1; *Kanter v. Barella*, 489 F.3d 170, 174 (3d Cir. 2007). More narrowly, Defendants argue that Scherer's claim for excess options issued in 2009 was barred by the statute of limitations and therefore was not meritorious. (D.I. 25 at 11.) Indeed, in her Complaint, Scherer acknowledged that the 2009 options were not at issue because of the relevant statute of limitations. (D.I. 1, ¶ 33 n.1.)

[8] Defendants argue that only Diodes' **shareholders** received a benefit as a result of the cancellation of Lu's stock options, and **not Diodes itself**, as required by the case law. (D.I. 25 at 11–12); *see Baron*, 413 A.2d at 878. Defendants' expert argues that a benefit to the shareholders is separate and distinct from any benefit to the corporation (D.I. 27 at 14–20.)
Additionally, Defendants argue that the value of the cancelled options is not substantial and quantifiable. (D.I. 25 at 12–15.) Specifically, Defendants argue that the true value of the cancelled options must be discounted to take illiquidity into account (*Id.* at 14), and that the prospective savings as a result of the lawsuit are too speculative and not adequately supported (*Id.* at 15.)

[9] Defendants argue that the requested fees are unreasonable in light of factors outlined in *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980) (evaluating the reasonableness of attorneys' fees based on: (1) results achieved, (2) time and effort expended, (3) relative complexities of the case and the skills applied by counsel, (4) any contingency factor, and (5) the standing and ability of counsel). (D.I. 25 at 15–19.) Defendants argue that the actual benefit achieved is minimal because the cancellation of the stock options did not create a true fund out of which fees could be paid. (*Id.* at 16–18.) Additionally, the Defendants argue plaintiffs' counsel expended very little time and effort because the Defendants ultimately mooted the lawsuit without any judicial prompting. (*Id.* at 18–19.)

1. The plaintiff's Motion for Attorneys' Fees and Reimbursement of Costs (D.I. 18)

   is GRANTED IN PART;

2. The plaintiff is awarded reasonable attorneys' fees in the amount of $1,245,045;[10]

---

[10] The court finds that Scherer has satisfied each of the elements required to obtain attorneys' fees where defendants have mooted the lawsuit. *See Baron*, 413 A.2d at 878. First, there is no dispute that any benefit conferred was causally connected to Scherer's lawsuit. (D.I. 19 at 14–15.)

Second, Scherer's claims were meritorious when filed. The complaint sufficiently alleged with particularity why demand was futile under the *Aronson* standard. (D.I. 1, ¶¶ 40–47); *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). Additionally, the inclusion of excess stock options granted in 2009 is permissible, even though the statute of limitations would have barred litigation on this issue. The lawsuit itself was meritorious when filed because Scherer's claims expressly excluded the 2009 options. (D.I. 1, ¶ 33 n.1.) Nonetheless, the Defendants and Lu cancelled the 2009 options, so the benefit ultimately conferred upon the Diodes stockholders can take this value into account.

Third, the court is not convinced that, in this context, there is any meaningful distinction between benefits conferred upon the corporation as opposed to the corporation's stockholders. (D.I. 25 at 11–12). Although the language in *Baron* specifies "benefit to the corporation," *Baron*, 413 A.2d at 878, other Delaware cases have not been so limited in their wording. *See, e.g., Sugarland*, 420 A.2d at 144 (examining "the results accomplished for the benefit of all the *shareholders* of [the corporation]" (emphasis added)); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1123 (Del. Ch. 2011) ("When a plaintiff pursues a cause of action . . . [that] generates benefits for the corporation *or its stockholders*, Delaware law calls for the plaintiff to receive an award of attorneys' fees and expenses . . . ." (emphasis added)). The court sees no reason to read the *Baron* standard in the restricted manner suggested by Defendants. Moreover, the court finds that the $4.9 valuation of the cancelled stock options is appropriate, given that this is the figure used by Defendants in their own disclosures. (D.I. 21.)

Scherer's proposed $2 million in hypothetical savings, however, should be excluded from the award. Scherer is correct that policies that yield "long-range benefit[s]" to the company may be taken into account in setting attorneys' fees. (D.I. 19 at 13); *see Chrysler Corp v. Dann*, 223 A.2d 384 (Del. 1966). Nevertheless, all of Scherer's cited cases focus on the policies themselves and do not support her position that attorneys' fees may be calculated based on the value of options that may have been but were not actually granted. *See Ryan ex rel. Maxim Integrated Prods. v. Gifford*, No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *14–15 (Jan. 2, 2009) (looking at the resulting "*corporate governance reforms* designed to *prevent future wrongful option grants*" in setting appropriate attorneys' fees (emphasis added)). Indeed, in distinguishing Defendants' *Citrix* arguments, Scherer herself emphasized the difference between "*actual, unauthorized* awards" versus "the *hypothetical issuance*" of options that "*might have been issued* in the future." (D.I. 28 at 6 (emphasis in original)); *see La. State Emps.' Ret. Sys. v. Citrix Sys., Inc.*, No. 18298, 2001 Del. Ch. LEXIS 115 (Sept. 17, 2001). Scherer's proposed $2 million in savings is too speculative and, as such, will not be included in the calculus.

The court agrees that Scherer's attorneys are entitled to a percentage of the $4.9 million "fund" that resulted from the cancelled stock options. *See Ams. Mining Corp.*, 51 A.3d at 1253. The court recognizes that Diodes itself recovered no money out of which a percentage could be paid; the cancelled options nonetheless yielded a common benefit to the stockholders that is sufficient to constitute a common fund. *See Goodrich v. E.F. Hutton Group, Inc.*, 681 A.2d 1039, 1049 (Del.1996) ("[T]he condition precedent to invoking the common fund doctrine is a demonstration that a common benefit has been conferred."). In view of Delaware's *Sugarland* factors, the court finds that 20% of the $4.9 million fund is appropriate. *See Sugarland*, 420 A.2d at 149. While Scherer's attorneys are not being "punished for having achieved a quick victory," (D.I. 19 at 19), the court must acknowledge that Scherer's goals were achieved almost immediately by Defendants' own actions, rather than through judicial resolution or even settlement. The court, nonetheless, is cognizant of the fact that Scherer's attorneys undertook this derivative action on a contingency basis and of the risk such actions entail. In its discretion and in light of the cited case law, the court determines 20% strikes the correct balance under *Sugarland* and is reasonable (D.I. 19 at 16–18.)

Scherer's requested $250,000 award for enhanced disclosures is appropriate. Defendants' assertions that the disclosures apprising Diodes' stockholders of the cancelled stock options contained no new information and lacked importance are not supported. (D.I. 25 at 18.) Scherer has presented adequate precedent in support of her

4

3.  The clerk of the court is directed to close C.A. No. 13-358-GMS.


Dated: September ___, 2014

_____
UNITED STATES DISTRICT JUDGE

---

request. *See In re Sauer-Danfoss*, 65 A.3d 1116 at 1136–37 (finding awards of $400,000–$500,000 appropriate in cases with "one or two meaningful disclosures").

     Finally, the court will award the attorneys' actual expenses in the amount of $15,045. In sum, the court approves an award of 20% of the $4.9 million value of the cancelled stock options ($980,000), $250,000 for enhanced disclosures, and $15,045 for actual expenses—for a total of $1,245,045.